## KINNARD v. GIBSON et al.*
### No. 5352.

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

*Rehearing denied April 1, 1937.

Edward L. Gladney, Jr., of Bastrop, for appellant.

Todd & Todd, of Bastrop, for appellees.

DREW, Judge.

This is a companion case to suit No. 5353 Kinnard v. Rice Drilling Co. (La. App.) 172 So. 592, wherein plaintiff sued the Rice Drilling Company et al. for compensation claimed to have been due for the same accident alleged in this case. Under plaintiff's contention in suit No. 5353, all defendants could have been joined in either case, thereby avoiding the necessity of two separate suits.

Plaintiff claims compensation for injuries he received due to an accident alleged to have occurred while he was in the employ of defendants, and was performing duties within the course and scope of his employment. For a full statement of the case, see suit No. 5353, styled Kinnard v. Rice Drilling Company et al., 172 So. 592, decided by us this day.

There are numerous defenses set up by defendants, but since we find one of them good and fatal to plaintiff's claim, it becomes unnecessary to discuss the others. The defense to which we refer is that plaintiff was not at the time of the accident in defendants' employ and was not engaged in performing duties within the scope and course of his employment. On this question the lower court found the facts to be: "On September 5, 1935, the evidence discloses plaintiff had been complaining with his side or chest, and the defendant, Gibson, instructed him, if he was sick, not to work the next day and sent word to the driller, Arnold, not to work plaintiff the next day. When plain-

tiff reported for work the next morning, the driller, Arnold, whom the record shows under the rules of oil operations, is the foreman on the job, instructed plaintiff not to work, and he returned to his home. Later on, on the same day, plaintiff returned to the well in company of several other members of the crew and while the crew was engaged in working on said well, plaintiff assisted them in the operations. The driller stated he did not know plaintiff was working until the time of the injury, however, he admits he carried plaintiff on his record as working that day. While so engaged, plaintiff was very seriously injured in his right leg, right hand, and considerably bruised on the back, and more or less generally, as a result of the accident, wherein he was caught in the cable or line and dragged over into the 'cat-head'. As soon as they could stop the machinery, plaintiff was released from the cable or cat-head and immediately carried to the Bastrop General Hospital, at Bastrop, where he received medical treatment under the care of one Dr. Sims. He was confined there for some time and later removed to his home."

The record discloses the lower court's findings are correct, as far as they go. Mr. Gibson, who was, the agent of defendants and who had charge of the drilling operations for them, instructed plaintiff the day before the accident not to report for work the following day. He also notified Mr. Arnold, the driller, who had charge of all the men working in the actual drilling of the well, not to allow plaintiff to work. Notwithstanding the instructions from Mr. Gibson, plaintiff reported for duty on the morning of September 6, 1935, and was then informed by the driller that he could not work. Plaintiff then returned to his home. Several hours later, he returned to the location with other members of the drilling crew and remained there the rest of the day. The usual crew used in the drilling of the well was the driller and four others—one to fire the boiler and three to work on the derrick. On this particular day an extra man was used,

therefore, the crew consisted of the driller and five others, not including plaintiff. Late in the afternoon, after coming out of the hole with the pipe or drill stem and while attempting to remove the bit, plaintiff either was on the derrick floor at the time or went onto it and began operating the "cathead," in an effort to release the bit. For some reason he became entangled in the rope, was thrown over onto the cathead, and seriously injured. Due to the manner in which the pipe was stacked in the derrick, the driller's view was obstructed and he could not see the man operating the cathead. The driller did not know plaintiff was operating the cathead until he was injured. Plaintiff was not ordered by anyone in authority to operate the cathead, and no one in authority had any knowledge he was working. He had been ordered not to work. There was no need for him to do so, as there was a full crew working on the well at the time.

The preponderance of the testimony is that the only work plaintiff did on that day was at the very time of the accident; that he was working as a volunteer without the knowledge or consent of the defendants or their agent, and against their instructions. Plaintiff is therefore in the same position as a stranger and trespasser would have been had he gone upon the derrick floor and been injured in attempting to operate the cathead. He was not in the employ of defendants at the time of the accident and was not performing services within the scope or course of his employment with defendants, and does not come within the Employer's Liability Act of this state (Act No. 20 of 1914, as amended). The fact that he had worked for defendants on the days previous to the time of the accident and that he intended to work there again at a later date, or that he had an interest in the well, does not change his status on the day of the accident when he was not in the employ of defendants.

The judgment of the lower court rejecting plaintiff's demand is correct, and it is affirmed.