No.——

First Circuit

SELLERS v. LOUISIANA SAWMILL CO., INC.

(May 8, 1928.    Opinion and Decree.)
(June 12, 1928.    Rehearing Refused.)
(July 20, 1928.    Writs of Certiorari and Review Denied by Supreme Court.)

*(Syllabus by the Editor)*

1. **Louisiana Digest—Master and Servant —Par. 154, 158.**

An employee being carried home by his employer, after work hours, in a conveyance operated by his employer for that purpose, is entitled to protection in the matter of service just as if he was engaged in the work for which he was employed.

2. **Louisiana Digest—Master and Servant —Par. 154, 156, 158.**

Where employee, while being carried home from work in a caboose by his employer, leaves it during a stop, employer is at fault if train is started before employee is given an opportunity to get on, even though he had been admonished not to get off and employer is liable to employee for compensation under the Workmen's Compensation Act No. 20 of 1914 as amended.

3. **Louisiana Digest—Master and Servant —Par. 154, 159.**

The provisions of Sec. 8 subsection (d), numbers 11 and 12 of Act 85 of 1926 do not apply to loss of half of a foot by employee.

4. **Louisiana Digest—Master and Servant —Par. 159.**

Loss of half a foot by injured employee has the effect of total loss and compensation under the Workmen's Compensation Act No. 20 of 1914 as amended by Act 85 of 1926 will be granted as for total loss of foot.

Appeal from the Parish of Vernon. Hon. Hal A. Burgess, Judge.

Action by J. C. Sellers against Louisiana Sawmill Co., Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Ferguson & Newman, of Leesville, attorneys for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

ELLIOTT, J.    J. C. Sellers, an employee of the Louisiana Sawmill Co., Inc., got his left foot and about half of his right foot cut off by being run over by defendant's train engaged in carrying him and its other employees home from their place of work in the woods. He was earning a daily wage of two dollars and fifty cents and alleges that he was engaged at the time in performing services arising out of and incidental to his employment, and claims compensation in the amount of 65% of his daily wages for four hundred weeks.

The alleged employment, wages and injury are admitted, but liability for compensation is denied on the ground that the plaintiff, while the train in which he was being transferred home, was stopped in order that the track ahead of it could be repaired, got out of the caboose in violation of defendant's orders, left and went up the track where the section crew was working. That when the train again started on its way, he attempted to catch on to the moving train and in some manner fell; the wheels of the caboose running over and cutting off his left foot, and cutting off his right foot about half way between the toes and the ankle. Defendant alleges that the accident did not arise out of nor in the course of plaintiff's employment, but while plaintiff was performing an act which was in no manner connected with and committing an act in disobedience of the rules and regulations of his employment.

Defendant alternatively urges that plaintiff deliberately failed to use the adequate guards provided by defendant for his protection against the accident complained of.

There was judgment in favor of the plaintiff as prayed for and defendant has appealed.

As for defendant's rule or regulation against the employees getting off and on moving trains, some of the employees were informed of same, but not all of them, and it was not shown with certainty that plaintiff was aware of it. The rule was not enforced and was generally disregarded. The employees were in the habit of getting on and off moving trains and nobody was ever discharged on that account.

The train was not such as we usually have in mind when we speak of a train, but was composed of a locomotive and two cabooses. The two cabooses were full of men who had been at work in the woods, and as an incident of their employment were being carried home by defendant after their work for the day was over. It has been decided a number of times that a party being carried home by his employer, after work hours, in a conveyance operated by his employer for that purpose, is entitled to protection in the matter of service just as if he was engaged in the work for which he was employed. Wilson vs. Banner Lbr. Co., 108 La. 590, 32 So. 460; Lawton vs. Pacific Coast Casualty Co., 144 La. 664, 81 So. 219; Farris vs. La. Long Leaf Lbr. Co., et al., 148 La. 106, 86 So. 670; Prevost vs. Gheens Realty Co., 151 La. 508, 92 So. 38.

On this occasion after the workmen had boarded the caboose and the locomotive had gotten some distance on its way, it was stopped by the track crew until the track could be repaired. The stop did not last longer than a few minutes, but when the train stopped a number of men started to get out. The skidder foreman was in one of the cabooses and he admonished the men not to get out, stating that the stop would be only for a few minutes and that it was against the rules of the defendant for the employees to be getting off and on moving trains. He may have addressed remarks to this effect to the plaintiff. He did not recall speaking specially to the plaintiff, but some of the witnesses say he did. The plaintiff testifies that he was not inside the caboose with the foreman and did not hear what he said. He was corroborated by one witness, who said he was not inside the caboose in which the foreman was sitting at the time the train stopped, and others inside of it say that they did not hear him request the men not to get out, etc.

The plaintiff got out of the caboose in which he was riding and walked up to the

locomotive. He says that he spoke to the engineer, but the engineer did not recall that he came there. There is no evidence that he went anywhere else. As soon as the track was in condition for the train to pass, the track crew signaled to the engineer to come on, upon which he immediately released his brakes, blew his whistle and started up without waiting for those to get aboard who had gotten out. The plaintiff says he was up near the engine at the time and immediately started back to the caboose in order to get aboard; that there were others catching hold and getting aboard as the train moved forward getting under way; that he caught hold and tried to get aboard, but in so doing his hand slipped and he fell, his feet going under the wheels of the caboose.

Defendant contends that in getting out of the caboose, against the order of its foreman, and in trying to get back while the train was moving, plaintiff disconnected himself from the service in which he was engaged while being carried home, and that it is therefore not liable for injuries.

It is not clear that plaintiff heard the admonition of his foreman, but suppose he did; that fact, after the train had stopped, would not have the effect contended for by the defendant. The admonition was against leaving the train while in motion. Plaintiff did not leave it while it was in motion, and he had a right to suppose that before the train was started he would be given an opportunity to get back. Getting out did not amount to leaving the train, even though he walked up to the locomotive, say fifty or seventy-five feet from the caboose. He did not leave nor engage in any private pursuit of his own not connected with the trip. The stopping, getting out and getting back into the caboose was all under the facts and circumstances, an incident and risk of the employment.

Under the Employers' Liability Act, the negligence of the plaintiff in the matter cannot be considered, and no rule or regulation of the defendant can relieve it from liability.

Defendant was at fault. Its employees who had for the moment gotten out of the caboose should have been given an opportunity to get back in it before it started. The train started before they were able to get back, thereby forcing them to either violate its own rule against getting on a moving train or else remaining out in the woods. Acting in such a situation even though admonished not to get off, the plaintiff is not barred from recovery. Farris vs. Louisiana Long Leaf Lumber Co., 148 La. 106, 86 So. 670; Baltimore Car Foundry Co. vs. Sophia Ruzicka, 4 A. L. R. 113.

Defendant urges the case of George Willie vs. Long Leaf Lumber Co., recently decided by the Court of Appeal, Second Circuit (see page 817). In that case the employee asked permission to get off, and was told by the foreman to remain on the train. He left the train, and according to the report of the case, walked down the track in the direction in which the train was going about one hundred yards, on private business. The train then resuming its journey, he attempted to get back aboard while it was in motion and in so doing fell under the cars and was injured. The Court held that he could not recover. But in the present case the plaintiff did not leave. He got out of the caboose, but he did not go off on any private affair of his own.

Under the facts and circumstances we think defendant is liable for plaintiff's injuries.

The defendant urges that plaintiff has not lost both feet. That he has lost one, and one-half of the other, and that his compensation for that reason should be the

amount fixed for one foot, and for half of another, as is provided for the loss of one phalange of a finger or toe, etc. Act 85 of 1926, Sec. 8, subsection (d), numbers 11 and 12.

The provision in question does not extend to the feet.

According to the physician called in the case, the ball of plaintiff's right foot is gone, leaving only the ball of the heel. The foot is in effect and in the intendment of the law, a total loss.

The permanent total loss of the use of a member is equivalent to the amputation of the member.

The judgment appealed from is correct. Judgment affirmed, defendant and appellant to pay the cost of both courts.