14 So.2d 773

**HARKNESS v. OLCOTT-STONE MO-TORS et al.**

No. 36986.

June 21, 1943.

Rehearing Denied July 13, 1943.

Thompson & Dormon, of Monroe, for applicant.

Hudson, Potts, Bernstein & Snellings, of Monroe, for respondent.

O'NIELL, Chief Justice.

This is a suit for compensation under the Employers' Liability Act, Act No. 20 of 1914. The defendant, employer, pleaded

that the plaintiff was not performing services arising out of or incidental to his employment at the time of the accident in which he was injured, and, in the alternative, that the injury was caused by the plaintiff's being intoxicated at the time of the injury. After hearing the case on its merits the judge of the district court rejected the plaintiff's demand, on the ground solely that he was not performing services arising out of or incidental to his employment at the time of the accident. The judge therefore found it unnecessary to consider the question whether the injury was caused by the plaintiff's being intoxicated. The court of appeal affirmed the judgment, without considering the alternative plea that the injury was caused by the plaintiff's being intoxicated. A rehearing was granted and the judgment was reaffirmed,—one of the three members of the court dissenting. The case is before us on a writ of review.

The essential facts of the case are not in dispute. The plaintiff was employed as an automobile salesman by the defendant, a commercial partnership styled Olcott-Stone Motors, conducting the business of an automobile sales agency and repair shop. The employment was on a commission basis, the commission being 6 per cent on sales of new cars and 7 per cent on sales of used cars. Under the agreement the plaintiff was entitled to his commission on all sales made to customers whom he brought to the defendant's place of business, even though the sale might be consummated finally by some other salesman. The plaintiff had been employed by the defendant only two weeks when, on Thursday, February 13, 1941, he negotiated a sale of a used Plymouth car to a prospective purchaser named S. E. Free. The plaintiff had heard that Free was in the market for an automobile and had commenced the negotiations several days before the completing of the agreement on February 13th. The price and terms of the sale were agreed upon, the cash payment to be $225, and the balance of the price to be represented by promissory notes secured by a chattel mortgage on the car. When the price and terms were agreed upon Free informed the plaintiff that he, Free, had only $75 of the purchase price, but that he had arranged with his brother, H. N. Free, for a loan sufficient to make up the cash consideration of $225, and that his brother had agreed to meet him at the Vicksburg Hotel, in Vicksburg, Mississippi, on the next day, or on Saturday, the 15th of February, to lend him the money. S. E. Free, therefore, asked the plaintiff to go with him in the automobile to Vicksburg to meet H. N. Free and get the $150 necessary to complete the transaction. The plaintiff agreed to make the trip with S. E. Free the next day. That afternoon, Thursday, the 13th of February, the plaintiff and S. E. Free drove about the City of Monroe, calling upon other prospective customers whom the plaintiff had contacted, informing them that the plaintiff would be out of town the next day. In driving about the city that afternoon the plaintiff and Free drank freely and became somewhat intoxicated; in consequence of which, and with the intention on the plaintiff's part of remaining in touch with his customer, the plaintiff invited and persuaded Free to

951

sleep at plaintiff's home that night. The next morning both men arose late, and, after gasing up the car at the expense of Free, the two men drove off for Vicksburg to meet Free's brother. The distance from Monroe to Vicksburg is about 70 or 80 miles. With the consent of the plaintiff, S. E. Free did the driving, for the purpose mainly of becoming well acquainted with the operation of the car, which both parties then regarded as belonging to S. E. Free. At a point near Tallulah, in Madison Parish, Louisiana, and not far from Vicksburg, the automobile, while traveling at a speed of about 45 miles an hour, left the highway and turned over and seriously injured the plaintiff. He was taken to the Vicksburg Hotel; and H. N. Free, who was at his home in McGehee, Arkansas, was notified by telegram of the accident to his brother and immediately went to Vicksburg. The automobile was wrecked by the accident, and the sale to S. E. Free therefore was never consummated.

■ Our opinion is that under the facts stated the plaintiff was performing services arising out of and incidental to his employment at the time of the accident. It is argued for the defendant, and was held by the district court and by the court of appeal, that, inasmuch as the price and terms of the sale of the car were agreed upon at the time when the plaintiff and S. E. Free left Monroe for the purpose of meeting H N. Free, to borrow the $150 necessary to complete the down payment, the plaintiff's going to Vicksburg was for the personal accommodation of Free and not for any purpose incident to his employment. On the contrary, it appears to

us that the plaintiff was going to Vicksburg not merely for the personal accommodation of Free, but for the purpose of consummating the transaction which he was negotiating for his employer, in the performance of his services arising out of and incidental to his employment. The fact that the plaintiff and Free had agreed to the terms of the sale would have availed the employer nothing—and in fact did avail him nothing—when the plaintiff failed to consummate the sale by collecting the down payment of $225 and receiving the chattel-mortgage notes. It was a reasonable and faithful act on the part of the plaintiff to remain with his customer for the purpose of completing the transaction; and as long as he remained with the customer in the attempt to carry out the transaction he was performing services arising out of and incidental to his employment.

■■ It is argued—and there is some testimony to support the argument—that the plaintiff was violating a rule of his employer by taking the automobile beyond the limits of the Parish of Ouachita, of which the City of Monroe is the parish seat,—and particularly by starting on a mission as far away as Vicksburg,—without first obtaining the consent of the managing partner of the defendant firm. But, according to the testimony, the violation of the rules in that respect consisted merely in the failure to obtain the consent of the managing partner. Our conclusion from the evidence is that the consent would have been given, in the circumstances of this case, if the plaintiff had

asked for it. Besides, the neglect or failure of an employee to obey instructions does not necessarily bar his right to recover compensation in case of a personal injury. Sears v. Peytral, 151 La. 971, 92 So. 561; May v. Louisiana Central Lumber Co., 6 La.App. 748; Sellers v. Louisiana Sawmill Co., 8 La.App. 779; McClendon v. Louisiana Central Lumber Co., 17 La.App. 246, 135 So. 754.

 Our conclusion being that the plaintiff was performing services arising out of and incidental to his employment at the time of the accident, it is necessary to remand the case to the district court in order for the judge to determine whether the injury was caused by intoxication, and, if not, for the judge to determine the rate of compensation which the plaintiff may be entitled to on account of his disability.

The judgment of the court of appeal and of the district court is annulled and set aside, and this case is ordered remanded to the district court for further proceedings consistent with the opinion which we have rendered. The costs of the proceedings in this court, and of the appeal already had in the court of appeal, are to be borne by the defendants; the liability for other costs is to depend upon the final disposition of the case.

ROGERS, J., dissents.

ODOM, J., dissents, being of the opinion that the opinion of the Court of Appeal is correct.

HAMITER, J., recused.