TATE, Judge.
The plaintiff was injured in a truck accident. By this suit he claims workmen’s •compensation benefits from his employer, Broadway, and the latter’s compensation insurer. The trial court dismissed this suit, ■and the plaintiff appeals.
The trial court summarized the principal issue and the relevant facts concerning this issue, as follows:
“From the testimony adduced on trial of ■-the case, on the morning of February 27, 1960, claimant reported to work and was told by his employer that he was to drive •a certain truck in the hauling of pulpwood that day. The employer told the claimant that he was to report to a certain section of the woods as soon as a helper arrived and that he, the employer, was going to go ahead •of the claimant to the area to which the ■claimant was to report.
“After the employer left for the appointed ■place in the woods, the claimant discovered that he had left his driver’s license at Lome, whereupon, he decided he should go 'home first to get his driver’s license. He took the employer’s truck as a means of conveyance to his home, and while on the way to his residence, which was some three miles from Robeline, Louisiana, the location of the employer’s place of business, the truck the claimant was driving turned over, ■and in this accident he received certain injuries.
“The key question to be first resolved is whether or not the injuries received by the •claimant arose out of and in the course ■of his employment.”
The trial court then held that the claimant’s injuries did not arise out of his employment because, in going home to get his driver’s license, he was on a personal mission at the time of the accident, even though the duties of his employment included driving his employer’s truck on the highways. (The trial court noted: “As far as this employer was concerned, this claimant could just as well drive the truck with his license at home as on his person, as the employer’s only responsibility is to make certain that a license has been issued to a driver.”)
Although the trial court’s factual findings are disputed, we find them to be supported by the evidence and adopt them as our own.
However, the trial court’s conclusion that, under these facts, the plaintiff’s injuries did not arise out of his employment, is inconsistent with the holdings in the recent decisions of this court, Castille v. Traders & General Ins. Co., La.App., 137 So.2d 396 and Alexander v. Insurance Company of the State of Pennsylvania, La.App., 131 So.2d 558, neither of which decisions was called to the attention of the trial court.
In the latter case, we summarized the law and jurisprudence concerning the principal issue herein as follows, 131 So.2d 560:
“An employee protected by the Louisiana statute is entitled to receive workmen’s compensation if disabled ‘by accident arising out of and in the course of his employment.’ LSA-R.S. 23:1031. As stated in Kern v. Southport Mill, 174 La. 432, 141 So. 19, 21, a leading case on the subject: For purposes of the workmen’s compensation act, ‘an accident occurs in the course of an employment when it takes place during the time of such employment’ and it arises out of the employment when it is ‘the result of some risk to which the employee is subjected in the course of his employment to which he would not have been subjected had he not been so employed’. In a later leading case, Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449, our Supreme Court held an employee’s disability compen-sable as arising out of and in the course of his employment, even though when incurred in departing from the post of duty in order to rescue a child attacked by a large dog, because the rescue attempt ‘was reasonably within the scope of those things contemplated by his employment.’ 60 So.2d 454.
*284 “Thus, in St. Alexandre v. Texas Co., La.App. Orleans, 28 So.2d 385, certiorari denied, compensation was awarded to an employee injured while getting a soft drink away from the bulk plant where he worked and while visiting temporarily in the main office of his employer. Likewise, in Rigsby v. John W. Clark Lbr. Co., La.App., 28 So.2d 346, certiorari denied, a bookkeeper received compensation, although injured when voluntarily and in excess of his assigned duties attending to a broken telephone wire dangling on the approaches to his employer’s premises.
“ ‘An employee is within the course of his employment where he is doing the work that he was engaged to do or an act or service naturally related or incidental thereto, or those reasonable things expressly or impliedly authorised by his contract of employment,’ 99 C.J.S. Workmen’s Compensation § 216, p. 711. (Italics ours.) ‘Acts necessary to the life, comfort or convenience of an employee while at work, although personal to him and not technically acts of service, are incidental to the service, and an injury occurring while in the performance of such acts is compensable as “arising out of”, and “in the course of”, the employment.’ 99 C.J.S. Workmen’s Compensation § 220, pp. 722-723.”
Applying these standards, we held in the Alexander case that an employee’s injuries arose out of the accident when he detoured home to get some work-boots, which he needed at work because it had commenced raining. In the Castille case, the employee was held not to have departed from the scope of employment by detouring to breakfast, where the circumstances of the employment indicated that such was within the reasonable contemplation of the employment contract, in accordance with which the employee habitually reported to work at an early hour before eating.
Likewise, in the present instance, the employee was required to drive the employer’s truck on the highways of the state. His going to get his driver’s license was an act naturally related to and incidental to the performance of his duties for his employer ; this was necessary to his being able to drive the truck for his employer on the highway and to his own convenience in doing so (especially since he was subject to arrest if he attempted to drive on the highways without his driver’s license, LSA-R.S. 32:411, 427); his injuries incurred in the performance of this act thus “arose out of” his employment.
Since the accident occurred after the claimant had reported to his employer’s premises for work and during the work-day and thus “in the course of” his employment, the employee’s injuries resulting from such accident are compensable as covered by other workmen’s compensation statute.
As to disability, the evidence reveals the following:
Following the accident of February 27, 1960, the plaintiff was hospitalized for a day at a local hospital. On March 1, 1960, he was hospitalized at the charity hospital in Shreveport. X-rays taken at that time showed that he had sustained fractures of the left transverse processes of the 2nd and 3rd lumbar vertebrae, which the evidence reflects to be relatively insignificant bony spurs. He was discharged, to return to the hospital if necessary.
The claimant testified that, after a month’s stay at home, he then attempted to return to work for other employers but was able to perform only the lighter duties, and then with complaints of back pain, especially in lifting.
The claimant retained an attorney and was sent by the latter to Dr. Overdyke, an orthopedist of Shreveport, who on August 9, 1960 examined the plaintiff, discovered the healed fractures of the transverse processes, and was of the opinion that the claimant had a residual of strain in the lumbodorsal region of the back — that the fractures themselves were not significant, except as indicating the force which had been applied to the back area in question *285 and which had produced the lumbodorsal strain. This physician felt that the claimant was able to perform his heavy duties, but would continue to have some pain and discomfort for several months. However, on November 18, 1960, he found the patient free of residual pain in the area involved in the accident and was of the further opinion that the plaintiff could return to work to heavy duties without significant disabling residual.
This specialist also thought that the normal period of disability was eight to ten weeks for injuries such as the plaintiff had sustained.
The only other doctor who examined the claimant was Dr. Morin, an orthopedist, who, as a result of his examination of January 23, 1961, felt that the claimant was completely recovered from any prior disability.
Under all the circumstances reflected by this record, we think that the claimant has proved that he was temporarily totally disabled between February 27, 1960 and November 18, 1960, the date he was discharged by Doctor Overdyke. The evidence also reflects that this latter physician not only examined him in connection with the litigation, but also undertook to treat the plaintiff; we think therefore the medical expenses in connection with such treatment are allowable, being the x-ray expenses in the amount of $65.00, plus the cost of a back brace, $56.10, for a total of $121.10.
As to the compensation rate: Both the defendant-employer and the plaintiff-employee agreed that the claimant was paid at the rate of $2.50 per load of pulpwood and that he averaged between two and three loads on a normal work day. The weekly wage upon which the compensation rate is based is ascertained by first computing the normal daily rate of pay and then calculating the weekly wages on the basis of a six-day week. Collins v. Southern Pulpwood Ins. Co., La.App. 3 Cir., 138 So.2d 638, certiorari denied. The claimant’s daily rate of pay thus computed is $6.25 (2(4> loads of pulpwood at $2.50 per load), and his weekly wage for purposes of computing compensation amounts to $37.50. His compensation rate is therefore 65% of this amount, LSA-R.S. 23:1221(1), or $24.37 per week.
For the foregoing reasons the judgment of the trial court dismissing the plaintiff’s suit is reversed. It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Lee Russell Gray, and against the defendants, Roy Broadway and the Southern Pulpwood Insurance Company, holding them liable in solido for compensation benefits in the amount of Twenty-four & 8%oo ($24.37) Dollars per week from February 27, 1960 to November 18, 1960, and in the further amount of One Hundred Twenty-one & 19ioo ($121.10) Dollars for medical expenses, together with legal interest upon such amounts from date of judicial demand until paid. The defendants-appellees are taxed with all costs of these proceedings and of this appeal
Reversed and rendered.