YARRUT, Judge.
This is an appeal from a judgment awarding Plaintiff workmen’s compensation for injuries sustained while engaged in demolishing a tool shed on the construction 'site of a school, in New Orleans, being -erected by general contractor, J. A. Jones Construction Company.
The undisputed facts are: Plaintiff, a carpenter, told his brother-in-law, Milton J. Wetzel, who worked for the architect on ‘the school job, that he was planning improvements to his home. In order to help Plaintiff with his home improvement project, Wetzel got permission from the general contractor for Plaintiff to tear down a tool shed on the construction site and keep the materials without cost. (The shed had been erected for the use of a subcontractor.)
When -Plaintiff arrived at the construction site, a guard, after first contacting the office and confirming that Plaintiff had permission to do so, permitted him to demolish and remove the shed. Plaintiff was injured when one of the tool shed’s walls collapsed while he was engaged in the .demolition.
' Defendants denied Plaintiff was an employee or agent of the general contractor or any subcontractor, but contended he 'was demolishing the tool shed in his own behalf to obtain the salvaged material.
The trial judge found that the shed belonged to Jones (the general contractor) ; that Plaintiff was an independent *839 contractor of Jones, performing exclusively manual labor, for which reason he was entitled to workmen’s compensation as such, viz.:
“ 'Independent Contractor’ means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.” LSA-R.S. 23:1021 (6).
Simply stated, Plaintiff was a mere donee of a tool shed located on the building site where the general contractor was erecting a public school. Because he needed some material for his home improvement, Plaintiff obtained permission from the general contractor to demolish a tool shed located on the construction site and remove the salvaged material for his own use at no cost. While Plaintiff was engaged in demolishing the shed as described above, he was injured by a collapsing wall of the shed.
In Brown v. City of Shreveport, La.App., 15 So.2d 234, the City sold an abandoned standpipe to the contractor which the latter agreed to remove, then sell and divide the proceeds with the City on resale. The court held the City and contractor were seller and purchaser, not employer and employee, and the contractor’s helper was not entitled to workmen’s compensation.
In support of his claim, Plaintiff cites Melancon v. Keller, La.App., 136 So.2d 67, and Sam v. Deville Gin, Inc., La.App., 143 So.2d 838, both of which are easily distinguishable from the case at bar. In the Melancon case, plaintiff was hired to paint a house for $130; he to furnish all necessary materials. In the Deville case, plaintiff hauled cotton in his own truck to defendant’s gin for a specific price per load. In both cases plaintiffs were found to be independent contractors covered by the Workmen’s Compensation Act In each of the cited cases, plaintiff had a contract to render services for a specified compensation. In the instant case, Plaintiff, not an employee of the general contractor or any subcontractor, had mere permission to remove the shed and keep the salvaged materials as his own without cost. The relationship of Plaintiff to Jones or Neuman was that of donee-donor, the only obligation on the Plaintiff as donee being to demolish and remove the object of the donation as his own without cost to the donor.
The plaintiff in a compensation case always bears the burden of proving the employer-employee relationship, even though the compensation statute is liberally construed. Thomas v. Berwick Ice and Fuel Co., La.App., 145 So. 384; Malone, Louisiana Workmen’s Compensation Law and Practice, § 54.
With regard to the existence of an employment contract, the Plaintiff testified as follows:
“Q. Let me ask you this. Who do you claim to have been an employee of on the date the accident occurred?
“A. I didn’t say I was an employee of anybody. My brother-in-law is the one told me to go out there and get the shack.
“Q. You never had a contract or entered into the employment of R. E. Neuman or the J. A. Jones Company ?
“A. A written contract?
* * * * * *
"Q. Please tell me whose employee *840 you claim you were on the date of the accident?
“A. I think I just answered the question.
“Q. Would you repeat it, please?
“A. I told you my brother-in-law told me I could go out there and get the shack and he made arrangements for me to come and get it.
* * * * * *
"Q. As to going on that job to tear down the shack, the only person you had contacted was your brother-in-law ?
“A. That’s right. He made the arrangements for me to go out there and get the shack.
* * * * * *
“Q. You were not paid any money by R. E. Neuman?
“A. No money, no.
“Q. You were not paid any money by J. A. Jones?
“A. No.
“Q. R. E. Neuman employees didn’t supervise your taking down the shack?
“A. No, they didn’t
“Q: Did you speak to any employees except the guard at the gate, relative to tearing down the shack, any employees of the R. E. Neu-man Company and the J. A. Jones Company ?
“A. Nobody, except the guard, which he went and found if it was all right to let me come in there and tear the shack down.
“Q. Did anybody supervise in any way your work there?
“A. No, they didn’t
* * * * * *
“Q. What was to be your payment for the job?
“A. He said if I went out there and tore the shack down I could have the material out of the shack.”
* * * * * *
Wetzel, when asked whether or not he was the agent for Plaintiff, answered:
“No, I didn’t act as any. I only acted as a brother-in-law.”
Wetzel further testified:
* * * * * *
"Q. You were not in the employ of J. A. Jones?
* * * * * *
“A. No, sir.
“Q. You had no authority to bind J. A. Jones?
“A. No, sir, I had no authority to bind anybody.
“Q. With regard to the shack, had you spoken to Mr. Tew some time prior to telling him about the shack or had he spoken to you about wanting the material to build a house?
“A. He spoke to me about thinking about putting the addition on the house in Harahan. I said that the job is getting near a wind-up there at the school. He said, Well, they have that shack out there,’ and I said, ‘Yes,’ and I said, T can ask the plumber or electrician what they’re going to do with the shack.’
“Q. And you did this?
“A. Yes, sir, I asked them and asked if they didn’t have any use for the shacks, what they were going to do with them. I said my brother-in-law was looking for some material.
*841 “Q. Did they ask you to enter into some employment relationship with Mr. Tew (the Plaintiff) ?
“A. No, there wasn’t any employment mentioned at all.
“Q. Was Mr. Tew in the employment of Mr. Jones at that time?
“A. No, he wasn’t in the employ of Mr. Jones on that particular job.
“Q. Was he in the employment of R. E. Neuman?
“A. No.”
Plaintiff and his brother-in-law proved conclusively that there was no contract of employment which first had to be established before Plaintiff could recover workmen’s compensation.
Therefore, the judgment of the district court in favor of Plaintiff and against Defendant is reversed, and judgment rendered dismissing Plaintiff’s suit; all costs in both courts to be paid by Plaintiff.
Reversed.