212 So.2d 540 (1968)
Willie LEWIS, Plaintiff-Appellant,
v.
Fred BELLOW et al., Defendants-Appellees.
No. 2385.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1968.
*542 Tate & Tate, by Donald Tate, Mamou, for plaintiff-appellant.
Donald Soileau, Mamou, for defendant-appellee, Fred Bellow.
Lewis & Lewis, by Seth Lewis, Jr., Opelousas, for defendant-appellee, Louisiana Pulpwood.
Clarence LeDay, in pro. per.
Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, III, Lafayette, for defendant-appellee, Lubert Andrepont & Alpine Mud Service, Inc.
Voorhies, Labbe, Fontenot, Leonard & McGlasson, by J. Winston Fontenot, Lafayette, for defendant-appellee, Aetna Casualty & Surety Co. and Kingsville Timber Co., Inc.
Guillory, Guillory & Guillory, by Robert K. Guillory, Eunice, for Lubert Andrepont, defendant appellee.
Before TATE, HOOD and CULPEPPER, Judges.
TATE, Judge.
The plaintiff Lewis was injured when he fell from a ladder while cutting a limb off a tree. He sues numerous parties for workmen's compensation benefits or, alternatively, for tort damages. He now concedes that the evidence at the trial excludes liability of all defendants except (a) Fred Bellow, (b) Clarence Ledet (LeDay), and (c) G. L. Malone (the latter chiefly only because of an alleged failure to comply with a discovery motion). The plaintiff appeals from the dismissal of his suit against these three defendants.
Lewis was employed as a woodcutter by the defendant Ledet, a pulpwood producer. Ledet had agreed to buy and cut pulpwood from property owned by Albert Dupre (who is not a party). Dupre's land was next to an amusement park owned by Bellow, another defendant. The Dupre pulpwood stand was most accessible to the highway through Bellow's tract, and Bellow had agreed to permit Ledet's crew to go through his land in connection with the latter's pulpwood cutting operations. The accident occurred when the plaintiff was cutting a limb on the Bellow tract at Bellow's request.
The principal issues of the appeal are: (1) Was the injured Lewis employed by Bellow at the time of his injury? (2) Did Lewis's injury arise out of and in the course of his employment with Ledetthat is, had Lewis deviated from his employment with Ledet at the time of his injury?

1. Was Lewis employed by Bellow at the time he was injured?

When Lewis's employer (Ledet) was given permission to traverse Bellow's land for the pulpwood operations, Bellow had also given him permission to cut any minor branches that impeded his access. Bellow contends that Lewis was injured while so doing for his employer, Ledet.
However, (as did the trial court) we accept the plaintiff's version as supported by the preponderant evidence: As Lewis was leaving one afternoon through the Bellow premises, Bellow asked him to use his power-saw to cut some tree limbs which were too close to the roof of a building-addition Bellow was constructing. While *543 Lewis was in the process of so doing, his saw caught, and he fell from the ladder. Lewis admitted that no discussion whatsoever took place as to any pay for the performance of this chore.
The existence of an employer-employee relationship is generally an essential requisite to any action arising under the Louisiana workmen's compensation act.[1] LSA-R.S. 23:1034, 23:1035; Jones v. Houston Fire and Cas. Ins. Co., 134 So.2d 377 (La.App.3d Cir. 1961); Malone, Louisiana Workmen's Compensation, Section 51 (1951). See also Tew v. Aetna Cas. & Surety Co., 174 So.2d 838 (La.App.4th Cir. 1965). In attempting to meet this requirement, the plaintiff Lewis essentially relies upon the principle summarized by Professor Malone in his authoritative treatise, cited above at Section 52, p. 53, as follows:
"A person may become an employee within the meaning of the Workmen's Compensation Act if he is performing a service for another with the latter's consent and subject to his control or direction. No formal contract between the two is necessary, and there need be no specific agreement as to how much is to be done or how long the arrangement shall continue. Nor is it required that the amount or terms of payment be settled, so long as the circumstances fairly indicate that the services were not intended as a gratuity and both parties understood that payment was to be made therefor." (Italics supplied by the court.)
The plaintiff further relies upon the statutory presumption of employee status when one is injured while rendering service for another in an employment covered by our compensation act. LSA-R.S. 23:1044. However, this presumption may be rebutted by proof that there was no contract or ratification of employment. Ratliff v. Jackson, 77 So.2d 753 (La.App.1st Cir. 1955).
The plaintiff Lewis's testimony itself negates any contract of employment. He admitted frankly that he had never asked either before or after the accident to be paid for the minor chore he performed with his employer's power-saw (Tr. 325, 362-63), although he also stated he "was looking for him to pay me after I finished". Tr. 325.
Perhaps Lewis's attitude is indicatively summarized by his reply when questioned, Tr. 325: "What you figured he'd (Bellow) pay you? A. Well, I wouldn't know, but I was looking for him to pay me something." In the context of the surrounding circumstances, this suggests that Lewis hoped for a possible tip or gratuity from Bellow in return for the favor he was performinga favor he could not very easily refuse, since Bellow had earlier granted him and his employer the favor of regular traverse across his land during the pulpwood cutting operations.
We therefore affirm the trial court's holding that Bellow is not liable to the plaintiff for any disability resulting from the accident sued upon. A person performing work gratuitously for another cannot recover workmen's compensation for injury sustained while doing so, because there is no contract of employment and thus no employee-employer relationship, a prerequisite to recovery of compensation benefits. Howard v. Early Chevrolet-Pontiac-Cadillac, Inc., 150 So.2d 309 (La.App.2nd Cir. 1963); Mire v. Adams, 55 So.2d 787 (La.App.1st Cir. 1951); Alexander v. J. E. Hixson & Sons Funeral Home, 44 So.2d 487 (La.App.1st Cir. 1950).

2. Did Lewis's disability arise out of and in the course of his employment by Ledet?

The plaintiff Lewis was employed by Ledet as a woodcutter. His primary duties were to cut and transport wood from the Dupre tract. His duties also required *544 him to traverse the Bellow land, and they did not exclude incidental cutting of tree limbs on said land. The plaintiff was crossing Bellow's land in the performance of his employment with Ledet when Bellow requested him to cut the limb.
The District Court held that, by cutting the limb for Bellow at the latter's request, the employee Lewis had deviated from his employment with Ledet and thus was no longer covered by the Louisiana workmen's compensation act. Accordingly, Lewis's suit against Ledet was dismissed.
In so holding, we believe that our learned trial brother fell into error. The momentary deviation involved no exposure to any substantially greater hazard than that occasioned by the regular duties of the employment. Under the jurisprudence to be cited, this deviation was therefore insubstantial and does not constitute cause to deny workmen's compensation to an employee so injured.
An employee protected by the Louisiana statute is entitled to receive workmen's compensation if disabled "by accident arising out of and in the course of his employment." LSA-R.S. 23:1031. In Kern v. Southport Mill, 174 La. 432, 141 So. 19, 21 (1932), a lead case, our Supreme Court stated that, for purposes of the workmen's compensation act, (a) "an accident occurs in the course of an employment when it takes place during the time of such employment", and (b) it arises out of the employment when it is "the result of some risk to which the employee is subjected in the course of his employment to which he would not have been subjected had he not been so employed." (Italics ours.)
In noting that deviations from normal duties to aid third persons do not necessarily deprive an employee of the coverage of the compensation act, the Supreme Court subsequently held that an employee's efforts to rescue a bystander from a dog were "reasonably within the scope of those things contemplated" by the employment, allowing compensation for disability incurred in a rescue attempt. Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449 (1952). Protection of the compensation act extends not only to disabilities incurred in the performance of employment duties, but also to activities reasonably connected with or incidental to them. Bates v. Gulf States Utilities Co., 249 La. 1087, 193 So.2d 255 (1966).
Further, acts of voluntary deviation from regular duties to accommodate third persons or for other purposes have been held to be within the course and scope of the employment, if at least partially performed in the employer's interest. Green v. Heard Motor Co., 224 La. 1078, 71 So.2d 849 (1954); Harkness v. Olcott-Stone Motors, 203 La. 947, 14 So.2d 773 (1943) (salesman going on overnight trip with purchaser after sale had been agreed upon, in order to be company for purchaser while he borrowed money to pay purchase price); Malone v. Plaisance Wholesale Grocery, 146 So.2d 853 (La.App.3d Cir. 1962) (construction worker helping supplier's employee perform the latter's duty of unloading a delivery). See Malone, Sections 167, 168, 175.
See also: Gray v. Broadway, 146 So.2d 282 (La.App.3d Cir. 1962); Castille v. Traders and Gen. Ins. Co., 137 So.2d 396 (La.App.3d Cir. 1962); Jagneaux v. Marquette Cas. Co., 135 So.2d 794 (La.App.3d Cir. 1961); Alexander v. Insurance Company of State of Pa., 131 So.2d 558 (La.App.3d Cir. 1961).
We conclude that Lewis's injury was sustained in an activity incidental to and arising out of his employment with Ledet. While traversing Bellow's land in his employer's truck, Lewis was asked by Bellow to use his employer's power-saw to cut a limb, work consistent with his employment and not involving any substantial deviation from nor greater risk than the plaintiff's normal duties.
Additionally, Bellow had gratuitously furnished Lewis and his employer the right of passage across his land. Undoubtedly, if the employer Ledet had been present at the *545 time of Bellow's request he would have acceded to it, as a not unreasonable minor favor in return for the favor of passage previously granted him by Bellow. Also, under the evidence, the loss of Bellow's good will in affording passage would have increased the employer's difficulties in performing his contract to buy and cut Dupre's pulpwood. "An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby favored, is within the course of employment," Larson, Workmen's Compensation Law, Section 27.00 (1966 text).
Considering these context circumstances, we do not find that Lewis's minor departure from his normal duties in order to help Bellow constituted such a deviation from them as to have constituted the performance of duties not arising out of nor in the course of his employment with the defendant Ledet. The plaintiff Lewis is therefore entitled to compensation benefits from Ledet during disability.

3. The plaintiff's disability, rate of compensation, and medical expenses.

As a result of his fall of July 14, 1964, the plaintiff suffered a compression fracture of two thoracic vertebral bodies. His attending physician discharged him as able to return to work after January 25, 1965. See Exhibit PD-3. After his discharge, the plaintiff's residual was evaluated by an orthopedic surgeon who examined him at his own request. This specialist found him able to perform the same activities as before the fall, Tr. 193, and cured without disabling residual, Tr. 198-99.
The plaintiff Lewis's subjective complaints of being unable to work after his discharge are not substantiated or corroborated by lay or medical evidence. They are insufficient to prove disability beyond the date of the plaintiff's discharge by his attending physician as cured after January 25, 1965.
With regard to Lewis's earnings as woodcutter, both Lewis and his employer testified the employee was paid $4.00 per load of pulpwood hauled. Lewis estimated that he and his coworker hauled from one to two loads per day, Tr. 313, which we will accept in the absence of further evidence as proof of an average haul of 1½ loads per day. This amounts to average daily earnings as woodcutter of $6.00 per day. (Lewis contends he also received additional compensation in the form of room and board and payment of his alimony of $6.00 per week. However, he himself indicates that this was for his services in living and working at Ledet's cafe. Tr. 313. He thus corroborates Ledet's testimony that these emoluments were payment for his work as after-hours cafe helper both before and during Lewis's employment as woodcutter.)
Under the Louisiana act, weekly workmen's compensation benefits are based upon the daily rate of pay, multiplied by a six-day week. LSA-R.S. 23:1021(11), 23:1221; Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399 (1956); Malone, Louisiana Workmen's Compensation, Sections 322, 323, 326 (1951). For temporary total disability such as the present, a disabled employee is entitled to weekly benefits of 65% of his wages during disability. LSA-R.S. 23:1221(11). Therefore, the plaintiff is entitled to recover 65% of his weekly wage rate, $36.00,i. e., to recover $23.40 weekly compensation, during his proven disability of July 14, 1964 through January 25, 1965. See, e. g., Gray v. Broadway, 146 So.2d 282 (La.App.3d Cir. 1962).
The record also contains proof of $777.80 medical expenses incurred by the plaintiff as a result of his injuries: $184.00, Dr. Brown; $81.60, Hangar (back brace); $369.50 New Orleans Charity Hospital; $54.00, Lafayette Charity Hospital; $88.70, Moosa Memorial Hospital.
The trial court judgment will be amended by our decree so as to allow the plaintiff Lewis recovery from the defendant Ledet for the proven disability compensation due and these proven medical expenses.

*546 4. Other issues.

a. Liability of defendant G. L. Malone: The defendant G. L. Malone was originally impleaded on the theory that the employer Ledet was acting for him as contractor, agent, or employee in cutting and hauling the pulpwood. However, the evidence positively excludes Malone's role as anything other than a buyer on the open market of pine cut by Ledet.
Nevertheless, on appeal the plaintiff Lewis suggests that his own difficulties improving his case were due to Malone's failure to comply with discovery orders and that Malone should at least be penalized under LSA-C.C.P. Arts. 1513, 1515 by having a default entered against him for unpaid compensation through the date he was required to comply with certain discovery motions. Such a harsh sanction for failure to discover may indeed be justified in certain circumstances.[2] However, the court refused to apply this sanction upon its evaluation that the defendant Malone had thought his lawyer had complied before this attorney had withdrawn from representing him.
We are unable to hold that the trial court abused its broad discretion to apply these sanctions or not, especially where as here the failure to comply is not shown to be willful. See Barron & Holtzoff, Federal Practice and Procedure, Sections 853, 855 (1961).
b. Tort Liability of Bellow: The defendant Bellow has sued alternatively in tort. There is no evidence of fault on the part of Bellow (or any other defendant). The trial court correctly dismissed the plaintiff's suit insofar as in tort.
Decree.
For the foregoing reasons, the trial court judgment is affirmed insofar as it dismissed this action against all defendants except Clarence Ledet; insofar as it dismissed the action against Ledet, however, the judgment is reversed; and
It is ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Willie Lewis, and against the defendant, Clarence Ledet, holding the said defendant liable for compensation benefits in the amount of Twenty-Three and 40/100 ($23.40) Dollars per week from and including July 14, 1964 through January 25, 1965, and in the further sum of Seven Hundred Seventy-Seven and 80/100 ($777.80) Dollars medical expenses, together with legal interest upon such amounts from date of judicial demand until paid. The defendant-appellee Clarence Ledet is cast with all costs of these proceedings and of this appeal.
Amended and affirmed.
NOTES
[1] The single present exception seems to be in the instance of an independent contractor employed by the principal to perform manual labor, see LSA-R.S. 23:1021(6).
[2] See, e. g., Sivelle v. Maloof, 373 F.2d 520 (C.A.1st, 1967), Jones v. Uris Sales Corp., 373 F.2d 644 (C.A.2d 1967), and Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (C.A.2d 1964), applying Federal Rules of Civil Procedure 37(d) and (b)(2) upon which the sanction provisions of La.C.C.P. Arts. 1513 and 1515 are based.