LOTTINGER, Judge.
This is a suit in Workmen’s Compensation. Petitioner is Nicholas W. Danos, Jr. and defendants are his employer, Great Acceptance Corporation, hereafter referred to as GAC, Travelers Insurance Company, hereafter referred to as Travelers, the Workmen’s Compensation insurer of petitioner’s employer, and New York Life Insurance Company, hereafter referred to as NYLIC, the issuer of a hopitalization, medical and surgical policy to the employees of GAC. The Lower Court rejected petitioner’s demand against GAC and Travelers and awarded judgment in favor of petitioner and against NYLIC in the sum of $18,362.50 with legal interest from judicial demand until paid and all costs. Petitioner has taken a devolutive appeal and NYLIC has taken a suspensive and devolutive appeal.
Stipulations were entered into between petitioner and defendants, GAC and Travelers, to the effect that petitioner was employed as office manager of GAC in its Galiano office on June 13, 1969; that petitioner was operating a 1968 Volkswagen sedan on Louisiana Highway No. 1, about 2 miles north of Larose, when he became involved in a collision with a 1965 Pontiac sedan; that the Volkswagen was owned by Hebert’s Auto Parts, Inc. for use by GAC and petitioner; that, as a result of the collision, petitioner was rendered totally and permanently disabled within the contemplation of the Louisiana Workmen’s Compensation Act; that his earnings were such that if he is entitled to compensation, it would be at the rate of $45 per week, for not more than 500 weeks; that all medical, drug, hospital and related items of expense would be admitted in evidence without proof, and that such expenses exceed $25,-000; that all written reports from physicians would be admitted in lieu of their testimony; and that all claims for penalties and interest, ’ as well as attorney fees for willful refusal to pay compensation benefits are abandoned.
In these stipulations, it is denied that at the time of the accident, petitioner was acting within the course and scope of his employment ; that in the event the Court should find that he was so acting, then liability is admitted for Workmen’s Compensation benefits of $45 per week, not exceeding 500 weeks and for medical expenses of not more than $12,500; and that petitioner must show by a preponderance of evidence, that he would be subjected to undue and unusual hardship should your defendant not furnish medical expenses in excess of $12, 500, but not more than a total of $25,000 as provided by the compensation act.
Stipulations of fact were agreed upon between petitioner and NYLIC to the effect that petitioner, an employee of GAC, was seriously injured in the accident on June 13, 1969, and that his medical expenses in connection with the accident exceed the policy limits. The policy limits are agreed upon to be $18,362.50. It was agreed that the policy was in full force and effect at the time of the accident; that if petitioner did not receive a judgment against GAC and Travelers and, if his judgment is limited to one *341 against NYLIC, that the judgment would be in the sum of $18,362.50, exclusive of costs and interest.
The evidence clearly reveals that petitioner was a manager of one of the finance companies of GAC at the time of the alleged accident. He had been so employed for approximately a year and at the time of the accident his salary was $600 per month. As manager, he was responsible for approximately 200 accounts which GAC had in its Galiano office. Petitioner’s duties were to try to get accounts, sign them up if they were direct loans, approve or disapprove all applications, study credit reports, and approve or disapprove loans either partially or in their entirety. He was responsible for collections and disbursements of all funds. His regular office hours were from 9:00 a. m. to 5 :00 p. m. daily during the week, with the exception of Friday when the closing time was 7:00 p. m. It was not unusual for him to make collections on delinquent accounts beginning from approximately 8:00 in the morning and ending sometimes as late as 9:00 or 9:30 o’clock in the evening.
In his work Danos was provided with an automobile owned by his employer which he kept with him and used to go to and from work. On the date of the accident, petitioner states that he left his office around 5:00 p. m. to go to Bruce Furniture Store in order to deliver a check and solicit business. He stayed there talking until about 7:00 p. m. and then called his office to have his adjuster take the day’s collections of money to the adjuster’s home where petitioner would later pick it up. Petitioner testified that he then left Bruce Furniture Store and went to the residence of David Mallett who was delinquent in his account with GAC. Mallett was not home, however, upon leaving the residence, Mr. Danos saw Mallett’s automobile on the opposite side of the bayou. Petitioner got into his own automobile and went to where he had seen the Mallett vehicle but Mallett had apparently left.
Petitioner then went to the residence of his adjuster, Mr. Bruce, and obtained the money bag from Mr. Bruce’s mother and proceeded on to a service station where he saw Mr. Bruce’s car. He stopped to tell Mr. Bruce that he had picked up the money bag.
Upon leaving the service station, petitioner continued to travel northerly on Louisiana Highway No. 1 toward his residence. Badeaux’s Grocery Store is located approximately 2 miles north of Larose and about j4 mile prior to reaching Danos’ home. Petitioner attempted to make a left turn into the parking area in front of Badeaux’s Grocery Store when he was involved in the severe accident with a vehicle traveling south.
Petitioner contends that he was going to visit with Mr. Badeaux of Badeaux’s Grocery Store to check on two delinquent accounts, one of Walter Thomas and the other of Pearl Young. GAC and Travelers on the other hand, contend that the petitioner deviated from the course and scope of his employment when he turned into the Badeaux Grocery parking lot and that his true intention in making the turn was to purchase groceries prior to returning home.
In rendering its decision against petitioner, the Lower Court said:
“The Court is not satisfied that the plaintiff went to Mr. Badeaux’s store in connection with his business. While it is possible that this is true, there is too much in plaintiff’s testimony that mitigates against him. It is the opinion of the Court that Mr. Danos went to the store on personal business.
For reasons best known to the plaintiff, plaintiff’s attorney strenuously attempted to and succeeded in keeping out of court record all conversations had by plaintiff with other people to the effect that he had gone there to buy groceries. Plaintiff’s co-employee, Mrs. Guidroz, (T-62), testified that she learned through sources other than plaintiff, namely through his *342 wife, that he had stopped at Badeaux’s for groceries. While this testimony was hearsay and plaintiff counsel objected to it, the Court is of the opinion that there was a weakness in plaintiff’s case in failing to produce his wife concerning the issue. This is not the point on which the Court is deciding against the plaintiff, but the thought that he should have produced his wife did occur to the Court. A man’s wife at times does actually know whether or not he is supposed to bring home some groceries. The facts are that the plaintiff’s wife knew whether or not he was supposed to bring home some groceries on the date of this accident. Her testimony was important and there was no reason for the plaintiff not to produce her unless her testimony was against him.
It is part of a compensation case for a plaintiff to prove that he was on duty and within the course and scope of his employment, just as much as it is incumbent upon the plaintiff to prove that he actually was an employee. Louisiana Revised Statutes, Title 23:1031, provides for benefits for an employee who ‘ * * * receives personal injury by accident arising out of and in the course of his employment, * * *
The petitioner claims error on the part of the Lower Court as follows:
1. In failing to have found Danos to be within the course and scope of his employment at the time of the accident;
2. In failing to aw.ard Danos full benefits for total and permanent disability together with $25,000 in medical payments as provided by Statute.
When petitioner was questioned about the nature of information which he sought to get from Mr. Badeaux, he answered that:
“Primarily since Walter Thomas was getting pretty far delinquent on his loan, I wanted to find out if he recently applied for credit and, if so, Mr. Badeaux could have informed me just about where that man lived if he had moved from where he had previously lived. The same thing for Pearl Young.”
The petitioner, however, testified that he knew exactly where Mr. Thomas lived and described to the Court the exact location of his residence. The evidence reflects that Pearl Young was not even delinquent in the payment of her account at the time of the accident.
Although petitioner testified that he frequently contacted Mr. Badeaux about credit information on various accounts, the evidence discloses that he had only one application for a loan that listed Mr. Badeaux as a credit reference. This was on an application for a loan by an individual other than Walter Thomas or Pearl Young.
Mr. Badeaux was of little assistance to petitioner in this case. He testified that petitioner frequently stopped at his store to buy groceries but that petitioner would ask for credit references only very infrequently. Mr. Badeaux could not specifically remember any discussion with petitioner regarding credit references except on one individual and that occurred more than a year prior to the accident. He could not remember the last time that petitioner had stopped in his store for credit information.
Although petitioner was in the habit of taking the office index cards along with him when checking on a file, at the time of the accident he did not have the card either on the Young or Thomas accounts. The only information he had at the time, was a card on Mr. David Mallett.
In support of its contention that he was within the course and scope of employment at the time of the accident, petitioner cites Kern v. Southport Mill, 174 La. 432, 141 So. 19. In that case the petitioner was instructed by a company official, during usual working hours, to go to the home of another company official and there perform certain mechanical work. The petitioner had no choice but to follow the directions of his employer. His means of transportation was *343 a public conveyance and on returning to work, when his assigned job was completed, petitioner was hit by a truck after alighting from a public conveyance immediately in front of his employer’s place of business. Although the appellate court had denied compensation to petitioner, the Supreme Court reversed this ruling and found that at the time of the accident the petitioner was on duty for his employer and within the course and scope of his employment.
Also cited by petitioner, is Lewis v. Bellow, La.App., 212 So.2d 540. In that case Lewis was on the payroll of Dupre and was cutting pulp wood for Dupre. Arrangements were made for Lewis and his crew to pass over the property of Bellow to reach the land where Dupre was cutting the pulp wood. Bellow was doing Dupre a favor in letting his crew pass over his land. Bellow requested Lewis to cut off a limb of one of his trees. In order to continue the friendly relationship between Dupre and Bellow, Lewis decided to cut the limb for Bellow, and in so doing got hurt. The court there decided that Lewis was cutting the limb for the benefit of and on behalf of Dupre, because it was necessary to keep a good relationship, and held that Lewis had a claim in compensation against Dupre, but not against Bellow.
More akin to the case which is now before us, however, is Mabry v. Fidelity and Casualty Company of New York, La.App., 155 So.2d 44, in which the Supreme Court refused writs. In that case, the petitioner was a used car salesman. One of the company cars had undergone repairs and had been returned to the used car lot. Petitioner took the repair shop employee back to his place of business. While petitioner was returning to his own place of employment, he decided to stop at the bakery shop to buy some bread. He pulled up to the curb, alighted from the car, took a couple of steps on the sidewalk leading to the bakery, slipped and fell upon the icy walkway.
There the court held against petitioner stating that if he had not turned aside from his employer’s business, but had continued to drive to the used car lot, he would not have stopped and parked in front of the bakery and would not have been on the sidewalk at the time he fell.
In citing Kern v. Southport Mill (supra) the court, in the Mabry case said:
“In determining whether an accident arose out of an employment, it is necessary to consider only the questions: (1) Was the employee then engaged in his employer’s business and not merely pursuing his own business or pleasure, and (2) did the necessities of the employer’s business reasonably require the presence of the employee at the place of the accident at the time the accident occurred?”
The court then went on to say:
“Under the facts in the instant case, it could not be said that plaintiff, at the time he sustained his fall, was engaged in his employer’s business. He was on his way into a bakery, as stated, to get bread for his wife to feed the birds, and, therefore, was obviously engaged in doing an act purely personal to him and which had not even the remotest connection with the business of his employer. Nor could it be said that this act was incidental to his employment or to his employer’s business.
It is likewise clear that the necessities of the employer’s business did not require plaintiff to be at the place where the accident occurred when it happened. Had he not turned aside from his employer’s business, he would have continued to drive to the lot, would not have stopped and parked in front of the bakery, and would have had no occasion to be on the walk leading to the bakery where he was at the time he fell.”
The Lower Court based its decision on Mabry v. Fidelity and Casualty Company of New York (supra) saying:
“The court does not believe that plaintiff was going to or turned into the Badeaux Store on any mission in connection with his employment, but was on a mission purely for his own personal ben *344 efit; that he, therefore, was not on duty and was not doing anything for the benefit of his employer as contemplated by the Workmen’s Compensation Statute; and that his claim against Great Acceptance Corporation and the Travelers Insurance Company must fail.”
The petitioner in Workmen’s Compensation and other civil cases bears the burden of proof and must establish his claim by a preponderance of evidence and to a legal certainty. Speculation, conjecture, mere possibility and unsupported probabilities are not sufficient to support a judgment in a Workmen’s Compensation proceeding. Credeur v. McManus, La.App., 175 So.2d 863.
We feel, as did the Lower Court, that the petitioner has failed to sustain his burden of proving that the accident occurred during the course and scope of his employment with GAC.
For this reason, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.