TATE, Judge.
This is a suit for workmen’s compensation benefits by the widow of Ernest Kirkland Ratliff, killed on October 7, 1953, allegedly in the course of his employment with Alton Jackson doing business as J & L Painting Contractors et al. Suit was filed for 300 weeks compensation at the rate of $30 per week against both Jackson and the United States Fidelity & Guaranty Company, his compensation insurer. From judgment dated May 21, 1954, rejecting her demands, plaintiff has prosecuted her appeal to this court.
The principal issue presented is whether the decedent was actually in the employ of Jackson at the time the fatal accident occurred; or, more precisely, whether Ratliff’s employment - as a painter at an hourly rate for a specific paint contract (for which Ratliff had been paid in full the day before his death) had included or been extended by employment as a solicitor of painting contracts for Jackson on a commission basis. It is undenied that at about 6:00 P.M., on October 7, 1954, when killed, decedent was using his employer’s truck which had been in decedent’s possession the entire day.
Decedent Ratliff had for approximately twenty years worked for various contractors as a steeplejack painter, employed at an hourly rate to paint tall edifices, such as radio towers, water tanks, etc. Immediately prior to his employment by defendant Jackson about a week before Ratliff’s death, decedent had worked for the Apex Paint Company of Houston. Due to this latter company’s financial difficulties, decedent’s employment therewith terminated.
*754 The Apex Paint Company, however, had been attempting to secure a contract with Gulf States Utilities Company to paint a radio tower in Beaumont. Decedent Ratliff, with his brother-in-law, L. E. VanZant of Beaumont, approached defendant Jackson, a painting contractor, and VanZant offered to assist Jackson in obtaining the contract. Jackson agreed to pay VanZant a ten per cent commission if VanZant was successful. At the conference where this agreement was reached, decedent Ratliff was present, and while Jackson denied it was part of the agreement, there was at least an implied understanding that decedent Ratliff would be given the painting work at an hourly rate if this contract was secured, as it subsequently was within the next few days. (VanZant was subsequently paid $39, or 10% of the contract price of $390.)
Decedent Ratliff was hired to do the painting for this contract at the rate of either $4 or $4.25 per hour. Ratliff was given a $35 advance on September 28, 1953, which was described by Jackson as a loan for living expenses, the contract was formally signed on October 1, 1953, and between October 1, 1953, and October 6, 1953, Ratliff, working by himself in Beaumont, completed the job.
He was given the use of a pick-up truck by Jackson in which to transport the painting materials and equipment and himself to Beaumont, since according to Jackson Ratliff had no transportation of his own.
Ratliff returned to Lake Charles on the afternoon of October 6, 1953, first went home, and then drove the pick-up truck to the office of Jackson, where he was paid by check the balance of $120.16 due him for the Beaumont work after deducting the advance of $35.
In support of her allegations that decedent Ratliff had been employed by Jackson additionally to solicit painting contracts on a commission basis, and was killed while so doing in the course of his employment as authorized or ratified by Jackson, plaintiff relies on the following evidence and the inferences therefrom:
(1) Decedent Ratliff was killed at approximately 6:00 P.M. near Oberlin in Allen Parish on the day following completion of the Beaumont contract, while driving and the sole occupant of defendant Jackson’s truck;
(2) Decedent Ratliff had phoned J. S. Simonson, of Gulf States Utilities Company at Lake Charles, Louisiana, to inquire about painting a radio tower for Gulf States, both before and after he saw Jackson on the evening of October 6th, and further left his wife the following morning, October 7th, at about 8 A.M. in Jackson’s truck and told her he was going to see Mr. Simonson of Gulf States; and by stipulation it was agreed that Ratliff had seen Simonson at 9 A.M. and inquired about painting a tower for Gulf States in Lake Charles and had given him one of Jackson’s business cards;
(3) At about 5 P.M. on October 7, 1953, an hour or so prior to his death, Ratliff had run into W. A. Carpenter of Oberlin in a cafe, and had told him that he, Ratliff, was employed by Jackson’s firm, the J & L Painting Contractors, and had given Carpenter this firm’s business card. Carpenter further testified that Ratliff told him he had been to Alexandria to see if he could obtain the contract to paint some towers there, and that he was going to De-Ridder to try to get the contract to paint a radio tower there. Carpenter had never met Ratliff before and was a total stranger, and this came up in the course of a conversation at a cafe;
(4) At the time of his death, Ratliff was carrying some J & L Painting Contractor business cards both in his wallet and in his pocket;
(5) Decedent’s brother-in-law, VanZant, testified that decedent Ratliff had told him while working on the Beaumont job that Jackson had hired Ratliff on the same sort of arrangement that VanZant had for obtaining Texas contracts, namely 10% for Ratliff’s assistance in obtaining any painting contracts in Louisiana;
(6) Mrs. Ratliff, widow of decedent, testified that at decedent’s funeral the wife *755 of the alleged employer, Mrs. Jackson, had stated that Jackson almost went with decedent Ratliff, but changed his mind and didn’t go.
To overcome the inferences arising from this testimony, defendant relies on the following evidence:
(1) The flat denial by Jackson that he ever had any agreement with Ratliff to employ him on a commission basis as alleged, and further explanation that many of his employees as friends would attempt to secure contracts for him, Jackson, by passing out his cards, or letting him know where towers needed painting, etc. ;
(2) The flat denial by Mrs. Jackson that she had implied at Ratliff’s funeral that her husband had authorized Ratliff’s use of his truck for the purpose of soliciting contracts, and her explanation that apparently decedent’s widow had misunderstood a conversation with a third person in which Mrs. Jackson had stated she was glad Jackson had not (as previously planned) gone to New Orleans, meaning that therefore Jackson was able to go to the funeral;
(3) Testimony by Davis Dought, Jackson’s superintendent, who drove up as Ratliff was leaving Jackson, to the effect that after Ratliff left on October 6, 1953, Jackson told Dought that if Dought wanted the truck Jackson had just taken home, he could get it at the office next morning, thus corroborating Jackson’s testimony that he had let Ratliff take the truck home (since Ratliff had no other means of going home), but had asked Ratliff to return it to the office the following morning.
Kutta, Jackson’s bookkeeper, who had left before the conversation between Jackson and Ratliff was completed on the evening of October 6th, did hear Jackson tell Ratliff “you can put that stuff (the equipment) in the warehouse when you bring the truck back”, but testified he heard nothing else of the conversation.
It may be well to note at this point that neither Mrs. Ratliff nor decedent’s twelve year old son, Robert, testified that decedent had ever told them that he was employed by Jackson on a commission basis. Van-Zant, decedent’s brother-in-law, who had a ten per cent commission basis arrangement between himself and Jackson, had never heard Jackson employ or imply that he had employed Ratliff on a commission basis, although he did testify that decedent Ratliff had told him that Jackson had employed decedent also on a ten per cent commission basis to secure business.
Jackson testified that he did employ a contact man or solicitor, but this man was paid on a regular weekly salary.
Plaintiff relies on Green v. Heard Motor Co., 224 La. 1077, 1078, 71 So.2d 849, to the effect that the workmen’s compensation statutes were intended to be liberally interpreted. In the Green case, the employment contract was not at issue, but a restrictive interpretation in the lower courts had denied an automobile salesman’s widow recovery when he was killed riding an airplane into which he had embarked in the course of his day’s activities in selling cars. Of course, in the Green case the question involved was a liberal application of the compensation statutes to the facts of an admitted contract of employment; in the present case, unfortunately, we would be required not to apply the law liberally, but to supply evidence of employment which is missing.
As Professor Malone has stated in the standard work Louisiana Workmen’s Compensation Law and Practice, at page 53-54, Section 52, “The Contract of Employment” (Footnotes omitted) :
“A person may become an employee within the meaning of the Workmen’s Compensation Act if he is performing a service for another with the latter’s consent and subject to his control or direction. No formal contract between the two is necessary, and there need be no specific agreement as to how much is to be done or how long the arrangement shall continue. Nor is it required that the amount or terms of payment be settled, so long as the circumstances *756 fairly indicate that the services were not intended as a gratuity and both parties understood that payment was to be made therefor.
“The relationship, however, rests on contract, and an offer by the employer that contemplates an acceptance brought to the attention of the offeror cannot, without such acceptance, give rise to the employer-employee relation. Similarly, one person cannot make himself the employee of another merely by undertaking to do the latter’s work without his knowledge, and in such case it is not sufficient that the claimant honestly believed he was an employee. Consent, however, may be implied where the employer, or even his authorized agent, know that the work was being doné, and failed to object when he had an opportunity to do so.” (Emphasis ours.)
Cited in support of these conclusions are the following cases, also for the most part cited by counsel for defendant: Alexander v. J. E. Hixson & Sons Funeral Home, La.App., 44 So.2d 487, Gentry v. Peterson, La.App., 19 So.2d 623, Kinnard v. Gibson, La.App., 172 So. 595, Young v. Petty Stave & Lumber Co., 7 La.App., 90, and Noble v. Southland Lumber Co., Inc., 4 La.App., 281.
In supplemental brief, counsel for plaintiff has called our attention to LSA-R.S. 23 :1044, which reads as follows:
“§ 1044. Presumption of employee status
“A person rendering service for another in any of the trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.”
In most of the cases cited by Professor Malone in support of his cited text, the employee in question was injured or killed while rendering services for another: in the Alexander case, plaintiff florist, injured while helping defendant funeral director as a part of a regular cooperative arrangement between the two, was held not to be an employee of defendant because there was no contract of employment; in the Gentry case, in which occurs a full discussion of the question, a permanently disabled timber cutter, although injured while actually working during the day for his employer, was denied recovery because his substitution for his brother, a regular employee of defendant, had not been approved or known by the employer, and there was no contract or ratification; and in the Noble case, a plaintiff carpenter on the premises under the mistaken assumption that he had been told to report for work, was denied recovery for injuries occurring after he reported, while the foreman was attempting to ascertain if there was work for him.
While we do not necessarily agree with the conclusions reached in all of the cases cited, it can be seen that the presumption of employee status under LSA-R.S. 23:1044 can be rebutted by proof that there was no contract or ratification of employment. The trial court, with its opportunity to see and hear most of the witnesses, found as a question of fact that Jackson did not authorize or ratify the activities of decedent on the date of his death in his employer’s behalf, and hence there was no contract of employment.
While the compensation law should be liberally construed so as to effect its humanitarian purposes, and while we sympathize with plaintiff’s position herein in that decedent’s lips are stopped by death insofar as any favorable testimony he might have been able to give, nevertheless we feel that plaintiffs have failed to prove other than that decedent was a “volunteer” without authorization or ratification, although killed while using his employer’s truck for purposes of soliciting additional business for his employer.
For reasons above assigned, the judgment of the trial court is herein affirmed. Costs to be paid by appellant.