LOTTINGER, Judge.
This is a suit in tort and, in the alternative, for benefits under the Louisiana Workmen’s Compensation Act, LSA-R.S. 23 :1021 et s'eq., for the death of the minor son of petitioners James Early and his wife, Mary Banks Early. The defendants are Ethyl Employees Recreation Association, its liability insurer, The Travelers Insurance Company, and its workmen’s compensation insurer, United States Casualty Company. The Lower Court rejected the petitioners’ demands against all defendants and dismissed the suit. The petitioners have appealed.
The record shows that Ethyl Employees Recreation Association, which will hereinafter be referred to as “ERA”, is a nonprofit corporation organized under the laws of the State of Louisiana. Its purpose is to provide wholesome recreation and entertainment for the employees of Ethyl Corporation in Baton Rouge. In connection with its purpose, it operates recreation facilities including a swimming pool. ERA has under its employ Hewitt Gomez, as Recreational Director, Robert Klein, as Center Attendant, as well as janitorial help. Mr. Klein is in charge of the janitors. The record shows that Ernest Thomas worked as janitor from Mondays through Saturdays of each week, and that on Sundays, which was Thomas’ day off, Leroy Hayes assumed the duties in place of Thomas.
On September 8, 1956, the ERA held dedication ceremonies for its new swimming pool. As there was a large crowd expected, both Thomas and his helper Hayes were requested to come to work. As Hayes had prior commitments he was asked to secure a substitute. Hayes asked his friend, Roosevelt Early, to substitute for him on that day and Early accepted. Early and Thomas both put in a full day of work on Saturday, September 8, 1956. Roosevelt Early was paid the sum of $5 as his wages. Upon paying Early his wages, Mr. Klein told Thomas to check with Hayes to determine whether Hayes was coming to work the following day, and that if Hayes did not intend to work that Thomas should come to work on Sunday, which was his usual day off. No one asked Roosevelt Early to return on Sunday, and it was assumed that his substitute work was terminated.
On Sunday morning, however, Roosevelt Early did show up at the swimming pool to the surprise of Ernest Thomas. However, Thomas stated that he assumed that Early had been told to work on that day and so they entered the pool area together and commenced to clean up on the apron of the pool. Thomas left Early cleaning the apron and went to clean up the ladies’ bath house. While he was in the bath house, he heard the door to the men’s bath house close and shortly thereafter heard the door close again. A short time later Thomas testified that he heard a splash which sounded like someone diving into the pool. Thomas assumed that Early was “sneaking a swim” and did not investigate because no one was supposed to be swimming at that time as there were no life guards present, and for the further reason that the pool was to be used for white persons and that Early being a Negro boy was prohibited from swimming therein. Upon completing his cleaning details in the ladies’ bath house, Thomas looked for Early in the men’s bath house, and not finding him there commenced to search for him. Early’s body was found under the diving board at the deep end of the pool. He was dressed in a lifeguard bathing suit.
Roosevelt Early was 17 years of age at the time of his death. His father and mother filed this suit in tort, and, in the alternative, for workmen’s compensation. Upon trial of the matter, the testimony disclosed that Mary Banks was previously married to George Hayes, from whom she was separated prior to the birth of Roosevelt Early. At the time of Roosevelt’s birth, his mother was living with petitioner, James Early, and they testified' that de *718 cedent was their child. James Early and Mary Early were married to each other after the death of their son and just a short time before trial. George Hayes and Mary Early were never divorced and the only information to his present whereabouts is the fact that someone told Mary Banks that he was dead just a few days before she married James Early. The issue has been raised as to the right of petitioners to bring this suit.
Of course, the tort claim by petitioners is based upon the negligence of the ERA. The petitioners raised the doctrine of res ipsa loquitur. No negligence whatsoever has been shown on the part of the defendants. The record shows that at the time Early was drowned, the pool was closed to swimming, as it was the rule of the ERA that no swimming would be allowed unless the life guards were present. Furthermore, on the day before his death, Thomas had told the deceased that the pool was exclusively for persons of the white race and that no Negroes were allowed to swim therein. The evidence shows that, although the deceased knew of the prohibition against his swimming in the pool, and knowing that no one was allowed to swim without the presence of life guards, he did enter the pool for the purpose of swimming. We feel that this is shown by the fact that he entered the men’s bath house and put on a life guard’s bathing suit. Furthermore, the duties assigned the deceased by Thomas was the cleaning of the mat where the stage had been located for the preceding day’s dedicatory ceremonies. This mat was located on the shallow end of the pool. At the time the deceased’s body was discovered, it was located' under the diving boards at the deep end of the pool. The pool is some 100 feet in length. Had the deceased fallen into the pool as is claimed by petitioners, it seems as though he would have fallen in the shallow end of the pool where he was supposed to be working.
The petitioners claim foul play because of the fact that there was a brush burn found on the forehead of Early’s body. We feel that'the record shows that this brush burn must have occurred when the deceased attempted to dive into the pool. Thomas testified that no one was present except himself and the deceased on that morning. He also testified that the deceased had criticized some of the divers during the preceding day’s ceremony and made the statement that he could have done better.
We feel that the record shows that the deceased entered the men’s bath house, took off his street clothes, and dressed himself in one of the life guard’s bathing suits and then returned to the pool for the purpose of swimming. It appears that he must have dove off the diving board and probably struck his head on the bottom of the pool. Although there was some testimony to the fact that the deceased was scared of water and never went swimming, it appears from his conversations with Thomas that he must have been interested in taking a swim,
We do not feel that the doctrine of res ipsa loquitur would apply to the factual situation of this case.
In Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132, 141, the Court considered a tort action based upon the death of a 10 year old boy. In that case life guards were present at the time of the boy’s drowning, however they did not know anything of the drowning until they found his body at the bottom of the pool after the pool had been closed. The Court applied the doctrine of res ipsa lo-quitur in that case. However, the Court said:
“A presumption of fault, on the part of the owner, does not arise merely because a person is drowned in his swimming pool. But where a person is drowned in a pool policed by life guards supplied by the owner under a contract with the deceased, and those guards have failed to see the drowned person in distress, either because of the fact that the pool was overcrowded, *719 or because they were not alert and vigilant in the exercise of their duties, then, in such case, it will be presumed that if the life guards had been attending to their task, they would have discovered the peril in time to rescue the life.”
The facts, however, in that case are clear, because there the boy was a paid customer of the pool, he had a perfect 'right to be there, and there were two life guards on duty at the time of his drowning. The situation in this case is altogether different. Furthermore, in the very recent case of Larkin v. State Farm Mutual Automobile Insurance Co., 233 La. 544, 97 So.2d 389, 391, the Supreme Court stated as follows:
“All that is meant by res ipsa loqui-tur is ‘that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant’s duty.’
“ * ' * * It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident may have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked.”
Under the jurisprudence of this State, we do not believe that the doctrine is applicable to the facts of this case. We do not think that the death of Roosevelt Early can be imputable to the negligence or omission of the defendant under the facts shown. Although we are not favored with a written opinion of the Lower Court, it obviously felt the same way, as the case was dismissed below.
The petitioners, although they claim workmen’s compensation in the alternative, very strongly urge that the tort action should prevail and in their brief state that this case comes under tort for two reasons — first, defendant’s business is not classified as hazardous, and, secondly, that the father of the deceased minor had not elected for him to come under the provisions of the Louisiana Workmen’s Compensation Act. As to their first contention, we believe that they are correct, however, as to the second contention, it is a presumption that a minor under the age of 18 shall come under the Compensation Act unless there is an express rejection of the Act by the minor’s parents. Bourgeois v. J. W. Crawford Construction Company, 213 La. 992, 36 So.2d 13.
As to the claim in workmen’s compensation, we also feel that the Lower Court was correct in dismissing same. No one in authority with ERA had hired the deceased to work on the day of his death. The only person who knew of his presence at the swimming pool was the janitor, Ernest Thomas, and the record clearly shows that the janitor did not have the authority to hire employees. The record shows that no wages were paid the parents of the deceased for the work that he performed on the day of his death. Furthermore, assuming that the deceased was an employee of ERA at the time of his death, we have been unable to find any cases which have held that a swimming pool is hazardous under the provisions of the Louisiana Compensation Act. In the petitioners’ brief, we find a statement that defendant’s business is not classified as hazardous. Of course, under the law of our state if the business is not hazardous it is not covered by the Compensation Act.
*720 The record indicates to us that at the time of his death Roosevelt Early was sneaking a swim, contrary to the restrictions of ERA. He had full knowledge that swimming at the time was prohibited, and that the pool was reserved strictly for persons of the white race. We have found no evidence in the record which would disclose any negligence on the part of the ERA so as to make them liable in tort. Furthermore, the record further discloses that Roosevelt Early was not employed by ERA at the time of his death, so as to make them liable in workmen’s compensation. If he was employed, the business of ERA cannot be classified as hazardous. The record fails to disclose that same was hazardous.
Under the above holdings it is not necessary for us to consider the rights of petitioners to maintain this action. The Lower Court was correct in dismissing the suit, and the judgment of said Court will be affirmed.
For the reasons assigned, the judgment of the Lower Court is affirmed, all costs to be paid by petitioners.
Judgment affirmed.