**Arthur Lee THOMAS**
and
**Annie M. Thomas, Plaintiffs,**
v.
**HYCON, INC., Defendant.**
**Civ. A. No. 1310–61.**

United States District Court
District of Columbia.
July 21, 1965.

---

24. 172 La. 51, 133 So. 359 (1931).

25. Oddly, even though reported prior to the Guccione case, that decision did not cite or mention Screen v. Trainor.

Philip J. Lesser, I. Irwin Bolotin, Lesser & Lesser, Washington, D. C., for plaintiffs.

Albert F. Beasley, Washington, D. C., for defendant.

KEECH, District Judge.

This action is before the court under Rule 42(b), solely on the issue of whether defendant is "some person other than the employer" within the meaning of Maryland's Workmen's Compensation Act, Md.Ann.Code, art. 101, § 58 (1957). The facts were agreed upon by stipulation of the parties.

On May 2, 1958, plaintiff was injured in a collision while operating a truck belonging to defendant Hycon, Inc. At the time, plaintiff was in the employment of Edmonds Art Stone Company, a corporation, and consequent to his accident, applied for and received compensation benefits by order of the Maryland Workmen's Compensation Commission. Subsequently, plaintiff brought this action against defendant Hycon, Inc., as a third party tort-feasor, alleging that the truck had defective brakes. Defendant contends that it was the employer, or so interrelated with and part of the "employer" in a single business enterprise that it is not a "third party" to the employee-employer relationship. Thus, it is contended, defendant is not liable to an action for damages for injury sustained in the course of employment, but is immune by virtue of the exclusive liability provisions of the workmen's compensation law. Md.Ann.Code, art. 101, §§ 15, 58 (1957).

Edmonds Art Stone Company is a Delaware corporation engaged in the manufacture of cinder blocks. Hycon, also a Delaware corporation, is a wholly owned subsidiary of Edmonds, engaged in the business of sales outlet or distributor of Edmonds' products, its only other business being minor sales of related products as an accommodation to customers. It is not disputed that this organization was selected for valid business reasons. The directors and officers of Hycon were also officers and directors of Edmonds. Various brochures, letterheads, and advertising carried the name of Hycon, Inc., with the additional words "DIVISION—EDMONDS ART STONE COMPANY", and in practical operation Hycon functioned as a department or division of Edmonds. However, separate books of account were kept by each corporation and separate profit and loss statements and income tax returns were prepared for each. Each corporation had its own employer identification number filed with the United States District Director of Internal Revenue, and each submitted separate payroll withholding tax and Social Security tax returns. The plaintiff's employment was reported on the payroll tax return of Edmonds. The stockholders and directors of each corporation held separate meetings, and separate minute books were maintained by each corporation.

All sales were made by Edmonds to Hycon in the yard, and Hycon then sold the products to customers. Deliveries were generally made from the plant site by independent contract hauler, but in

peak periods, when the contract hauler could not handle all deliveries when and as desired by customers, Hycon undertook to make some of its own deliveries in one or both of two trucks owned by it. Hycon had no truck drivers or other delivery personnel, so that on these occasions someone in the regular employ of Edmonds who was qualified was assigned by the latter to drive the Hycon truck. On some occasions the plant superintendent for Edmonds drove, and on others he assigned plant employees of Edmonds who were known to be qualified truck drivers. The employee was continued on Edmonds' payroll and paid by Edmonds without any distinction as to time spent in making such deliveries for Hycon, but such time was carried as temporary memoranda for intercompany adjustments at appropriate times, usually at the end of the fiscal year.

The plaintiff had been hired by Edmonds only a few weeks prior to the accident, and at that time had made known his qualifications as a truck driver. As a result, he had been assigned to drive the Hycon truck on deliveries several times before the accident.

Edmonds' workmen's compensation insurance, like its automobile liability and general liability insurance, was carried jointly in the names of Edmonds and Hycon. No issue was raised in the compensation proceeding as to who was the "employer" liable for payment of the compensation. The case was handled with Edmonds as the named employer reporting the accident as an injury to its employee, and the loss was charged by the Rating Bureau against Edmonds and Hycon under the joint policy.

■■ In deciding whether defendant Hycon can be liable in negligence to this plaintiff, this court is constrained to apply the law of Maryland, despite the fact that this forum is the place of injury. Where compensation has been awarded by the state of employment, the workmen's compensation law of that jurisdiction will govern any subsequent tort action. See Jonathan Woodner Co. v. Mather, 93 U.S.App.D.C. 234, 210 F.2d

868, cert. denied, 348 U.S. 824, 75 S.Ct. 39, 99 L.Ed. 650 (1954) (dicta); Restatement, Conflict of Laws § 401, comment b (1948 Supp.).

■ Under the Maryland statute, a general contractor is liable for workmen's compensation to the employees of any subcontractor engaged in the work of the general contractor, just as if they were employed by the general contractor. Md.Ann.Code, art. 101, § 62 (1957). Thus, an employee of a subcontractor, injured by the negligence of the general contractor, is not permitted to bring a tort action against the general contractor, because of the exclusive liability provisions of Section 15 of the Code. State to Use of Reynolds v. City of Baltimore, 199 Md. 289, 86 A.2d 618 (1952). When the positions are reversed, however, and an employee of the general contractor is injured by the negligence of the subcontractor, this court must accept as Maryland law that the subcontractor is amenable to suit as a third party. Hardesty v. Alliance Plumbing & Heating Co., Inc., 114 U.S.App.D.C. 360, 316 F.2d 361 (1963); 2 Larson, Workmen's Compensation § 72.32 (1961).

■ Moreover, "persons other than the employer", against whom negligence suits are permitted, have been held to include fellow servants. The fact that the tort feasor is engaged in the same business enterprise as the injured party does not prevent the party injured by the negligence of a co-employee from bringing a negligence suit against such co-employee. Crown Cork & Seal Co., Inc. v. Hutter, reported in The Daily Record March 13, 1943 (Super.Ct.Balto.City); accord, Hardesty v. Alliance Plumbing & Heating Co., supra.

Defendant's case must turn, therefore, on whether or not Hycon is a joint employer with or is identical with the employer Edmonds. No contractual relationship between Edmonds and Hycon will suffice to extend Edmonds' immunity —it must exist between the plaintiff and Hycon. For this purpose, defendant claims the relationship between Edmonds

and Hycon is not one of contract, but of identity or joint venture.

In Saf-T-Cab Service, Inc. v. Terry, 167 Md. 46, 172 Atl. 608 (1934), it was held that it was a question of fact for the jury whether a taxi fleet owning corporation was so involved with the taxi operating company by whom plaintiff was employed, but which was bankrupt, that the owning corporation could be considered the plaintiff's employer for the purposes of workmen's compensation liability. If such a finding is made in the instant case, plaintiff's action must be foreclosed, because anyone subject to workmen's compensation liability is exempted from tort liability.

A careful comparison of the facts in Saf-T-Cab with those in the instant case does not indicate the same relationship here as that from which identity was there allowed to be inferred. In Saf-T-Cab, the enterprise was so integrated that both corporations used only one account. In the instant case, the businesses were distinct, one being in manufacturing, the other in distribution. Stocks were sold in the yard, with a complete transfer of title from Edmonds to Hycon, and separate accounts were maintained for all purposes. Such sales, with their consequent transfer of title, negate any idea of joint venture. There is no evidence of a sharing of profits and losses, or joint proprietary interest or right of mutual control over the subject matter of the enterprise which might indicate a joint venture.

Saf-T-Cab was essentially a case in which the non-employing corporation was set up with no purpose or function other than the holding of title to the business assets. Cf. Williams v. Consumers Ice Co., 68 So.2d 246 (La.App. 1953). In such a case, identity may be readily inferred. This is not such a case; Hycon has real, organic business functions and interests different from Edmonds. This court holds, therefore, that Hycon and Edmonds were not a single employer for the purposes of the Act. See Foley v. New York City Omnibus Corp., 112 N.Y.S.2d 217 (Sup.Ct.

1952); cf. Brown v. Moorehead Oil Co., 239 S.C. 604, 124 S.E.2d 47 (1962).

Defendant contends that, if Hycon and Edmonds are not identical, they are "joint employers", both liable for workmen's compensation, and therefore immune from tort liability. The rules for determining the existence of the relationship of employer and employee under the Workmen's Compensation Act are the same as the rules at common law for determining the relation of master and servant. Sun Cab Co. v. Powell, 196 Md. 572, 577, 77 A.2d 783, 785 (1951). The Maryland Court of Appeals has enumerated the following criteria: (1) the selection and hiring of the servant, (2) the payment of wages, (3) the power of dismissal, (4) the right to control the servant's conduct, and (5) whether the work being done is essentially that of the special employer. L & S Constr. Co., Inc. v. State Acc. Fund, 221 Md. 51, 155 A.2d 653 (1959). Compare 1 Larson, Workmen's Compensation § 48 (1964). That Court has also held, however, that none of these factors is decisive, except "the right to control and direct the servant in the performance of his work and in the manner in which the work is to be done. It * * * is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his right to do so that is important." Keitz v. National Paving & Contracting Co., 214 Md. 479, 491, 134 A.2d 296, 301 (1957). (Emphasis omitted.)

In the instant case, it cannot be said that Hycon had the right to control plaintiff's conduct. The plant foreman of Edmonds Art Stone Company assigned plaintiff to the delivery run on this as on previous occasions; there is no evidence that anyone other than the foreman controlled the plaintiff, or had the right to control him, in the details of his run, its destination, and manner of performance.

Moreover, the right to control a servant's conduct cannot be inferred from facts which do not indicate the em-

# 156

ployee's consent. Before a person can be held as a joint, or special, employer there must be a contract of hire, express or implied, between the employee and such dual or borrowing employer. In re Brooks' Case, 338 Mass. 692, 157 N.E.2d 231 (1959); Gipson v. Skelly Oil Co., 152 F.2d 588 (5th Cir. 1946); cf. Bently, Shriver & Co. v. Edwards, 100 Md. 652, 60 Atl. 283 (1905). The relationship must exist between the employee and the special employer, irrespective of any arrangements between the two employers. In vicarious liability cases, the focus is on the relationship between the two employers—their agreement, how they divided control, how payment was effected, and whose work, as between themselves, was being done—and the consent of the employee being transferred or shared may not be relevant in determining which of two employers should be held liable for the employee's negligence. But in compensation law, since the employee, although gaining certain rights, loses others, including the right to sue the special employer in common law negligence, the creation of a new employment relationship cannot be inferred without his consent. Fisher v. City of Seattle, 62 Wash.2d 800, 384 P.2d 852 (1963); 1 Larson, Workmen's Compensation § 48.10 (1964).

 This consent may be implied. Acceptance of the control and authority of a special or dual employer may indicate consent. Bright v. Bragg, 175 Kan. 404, 264 P.2d 494 (1953); cf. Naranja Rock Co., Inc. v. Dawal Farms, Inc., 74 So.2d 282 (Fla.1954). Acceptance of payment from the special employer may also be relevant. See Charles v. Lincoln Constr. Co., 235 Ark. 470, 361 S.W.2d 1 (1962). But there is no indication in the stipulated facts of this case that plaintiff in any way consented to an employee relationship with Hycon, Inc. Plaintiff's operation of the defendant's truck was entirely in obedience to employer Edmonds' instructions.

 This court finds, therefore, that defendant Hycon, Inc., is a third party within the meaning of the Maryland Workmen's Compensation Act, and may be liable in damages for any injuries sustained by employees of Edmonds Art Stone Company as a result of Hycon's negligence. Counsel will present promptly an appropriate order.

This is an important question, and one which was resolved in favor of plaintiff after much thought. The contention and argument of defense counsel have real merit. Both counsel have heretofore indicated that the question should be resolved with finality prior to actual trial. Therefore, this court will, upon motion of counsel, certify this question for immediate appeal as contemplated by Title 28, § 1292(b), United States Code.