284 So.2d 104 (1973)
Franklin GASPARD, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellants.
No. 4293.
Court of Appeal of Louisiana, Third Circuit.
October 15, 1973.
Rehearing Denied November 2, 1973.
*105 Gold, Hall, Hammill & Little, by Leo Gold, Alexandria, for defendants-appellants.
Peggy Lynn Perkins, Moreauville, for plaintiff-appellee.
Before FRUGÉ, SAVOY and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff, Franklin Gaspard, instituted suit against the Travelers Insurance Company, and its insured, Roy Ducote, doing business as Ducote's Home Appliance, for workmen's compensation benefits. Defendants answered denying the plaintiff's allegations and subsequently filed a third-party demand against Paul Gaspard, d/b/a Gaspard's Mobile Service Station. Judgment was rendered in favor of the plaintiff, and against defendants, awarding the plaintiff workmen's compensation benefits from May 14, 1971, through August 2, 1971, at the rate of $19.50 per week, with the usual legal interest provisions. The judgment further awarded 12% penalties and attorney's fees of $1,000.00 and reserved defendant's rights under the third-party demand against Paul Gaspard. Defendants appeal. Plaintiff has neither appealed nor answered defendants' appeal. We affirm.
All parties agree that the sole issue presented in this appeal is a legal one, to-wit: Was there an employee-employer relationship between plaintiff and Roy Ducote so as to make the former a borrowed employee?
Pertinent facts relative to the determination of the legal question herein are as follows:
Plaintiff, Franklin Gaspard, was employed by Paul Gaspard, d/b/a Gaspard's Mobile Service Station, in Marksville, Louisiana. On May 14, 1971, defendant, Roy Ducote, asked plaintiff to assist him in the delivery of a refrigerator, since his regular employee was unavailable. Plaintiff informed Mr. Ducote that he was alone at the station and would have to secure permission to assist Mr. Ducote from his employer, Mr. Paul Gaspard. Upon Mr. Gaspard's return, he consented to his employee assisting Mr. Ducote after lunch when Mr. Gaspard would be available to watch the station.
Pursuant to the agreement, at approximately 1:00 P. M. on that same Friday afternoon, plaintiff and defendant Ducote were attempting to load the refrigerator onto a truck for delivery in the vicinity of *106 Marksville. During the course of loading the refrigerator, plaintiff suffered an injury to his foot. Plaintiff, however, continued to assist Mr. Ducote and completed the delivery of the refrigerator and loaded a refrigerator taken in trade by Mr. Ducote. The entire operation required approximately one hour to complete. After returning to Marksville, plaintiff returned to his employment at Mr. Gaspard's service station and completed the remainder of his work day. Plaintiff subsequently worked Saturday and Sunday following his injury.
On Saturday the 15th, as he was leaving his store, Mr. Ducote drove across the street to Mr. Gaspard's service station and handed the plaintiff a dollar and insisted upon the plaintiff taking the dollar as a tip. Plaintiff accepted the dollar from Mr. Ducote.
Plaintiff contends that defendant Ducote, in requesting that plaintiff assist him in the delivery of a refrigerator, made him a borrowed employee of Mr. Ducote. Defendants insist that, in order to find that plaintiff was a borrowed employee of Mr. Ducote, it must be determined that an employee-employer relationship was created between the plaintiff and Mr. Ducote. They contend that no such relationship existed at the time of the accident and therefore, plaintiff is not entitled to any remedy under the Workmen's Compensation Law.
The trial court held that plaintiff was a borrowed employee of defendant, Roy Ducote. The judge in his written reasons stated it was inconceivable that Ducote expected the plaintiff would assist him without remuneration, and reciprocally that the plaintiff would do this without expectation of payment. Therefore, the court found that there was a contract of employment between the parties.
The cases involving the borrowed employee doctrine basically fall within two categories. The first of these situations is of employers trading employees at various times in order to compliment each other's peak work period occurring at different times. See for examples: St. Paul Fire and Marine Ins. Co. v. Richard, 208 So.2d 35, 38 (La.App. 3rd Cir. 1968), writs refused 252 La. 171, 210 So.2d 54; Humphreys v. Marquette Cas. Co., 235 La. 355, 103 So. 2d 895 (1958). The second is the situation as in Smith v. Kelly Labor Service, 239 So. 2d 685 (La.App. 4th Cir. 1970), writs refused, 257 La. 173, 241 So.2d 531, wherein the borrowing employer compensates the general employer directly for the work done by the borrowed employee. These usually involve specialized labor situations where the maintenance of such individuals on the payroll of the borrowing employer cannot be justified. This is not to say that these are the sole instances in which the borrowed employee relationship can exist.
Plaintiff relies upon jurisprudence recognizing the proposition that payment not necessarily be made in money, and wages need not be paid by the employer. St. Paul Fire and Marine Ins. Co. v. Richard, supra; Smith v. Kelly Labor Service, supra. The proposition is best summarized, we think, by Professor Malone in his Treatise on Workmen's Compensation as follows:
"A person may become an employee within the meaning of the Workmen's Compensation Act if he is performing a service for another with the latter's consent and subject to his control or direction. No formal contract between the two is necessary, and there need be no specific agreement as to how much is to be done or how long the arrangement shall continue. Nor is it required that the amount or terms of payment be settled, so long as the circumstances fairly indicate that the services were not intended as a gratuity and both parties understood that payment was to be made therefor." Malone, La. Workmen's Compensation, § 52, p. 53 (1951).
The recovery of workmen's compensation benefits under the borrowed employee doctrine, however, is contingent upon the establishment of employee status *107 between the plaintiff and the alleged employer. It is well settled that the existence of an employer-employee relationship is an essential requisite to any action arising under the Louisiana Workmen's Compensation Act. LSA-R.S. 23:1031, 1034, 1035; Malone, Louisiana Workmen's Compensation, § 51, p. 52 (1951); Loomis v. Highland Hospital, Inc., 274 So.2d 200 (La.App. 2nd Cir. 1973); Ferguson v. HDE, Inc., 274 So.2d 783 (La.App. 3rd Cir. 1973); Ponthieux v. Lindsay, 216 So.2d 407 (La. App. 3rd Cir. 1968); Lewis v. Bellow, 212 So.2d 540 (La.App. 3rd Cir. 1968); Sicard v. City of New Orleans, 176 So.2d 672 (La.App. 4th Cir. 1965); Jack v. Sylvester, 150 So.2d 789 (La.App. 3rd Cir. 1963); Howard v. Early Chevrolet-Pontiac-Cadillac, Inc., 150 So.2d 309 (La.App. 2nd Cir. 1963); McDonald v. Ouachita Commercial Insurance Agency, Inc., 129 So.2d 296 (La.App. 2nd Cir. 1961); Hano v. Kinchen, 122 So.2d 889 (La.App. 1st Cir. 1960); Early v. Ethel Employees Recreation Association, 101 So.2d 716 (La.App. 1st Cir. 1958); Menard v. Brown and Cassidy Warehouse, Inc., 72 So.2d 891 (La. App. 1st Cir. 1954); Mire v. Adams, 55 So.2d 787 (La.App. 1st Cir. 1951); Alexander v. J. E. Hixson and Sons Funeral Home, 44 So.2d 487 (La.App. 1st Cir. 1950). The exception to this rule is apparently the instance of an independent contractor employed by the principal to perform manual labor. LSA-R.S. 23:1021, Subsection 6.
Plaintiff is afforded the statutory presumption of employee status when rendering service for another in any trade, business, or occupation covered by the Workmen's Compensation Law. LSA-R.S. 23:1044. Lewis v. Bellow, supra; Stull v. Russo, 85 So.2d 112 (La.App. 1st Cir. 1955); Ratliff v. Jackson, 77 So.2d 753 (La.App. 1st Cir. 1955); St. Paul Fire and Marine Insurance Company v. Richard, supra.
This presumption, however, may be rebutted upon proof that there was no contract of employment expressed or implied between the alleged employee and alleged employer. Lewis v. Bellow, supra; Ratliff v. Jackson, supra.
There is no general test that can be applied to the determination of the employee-employer relationship. This is recognized in the Richard and Hixson cases supra. In those cases, the considerations are best stated:
"The essence of the relationship is the right to control. The four primary evidentiary factors considered in deciding the above are
"1. Selection and engagement.
"2. Payment of wages.
"3. Power of dismissal.
"4. Power of control."
In this case no issue is made of the fact that Mr. Ducote, with Mr. Paul Gaspard's permission, selected the plaintiff to perform services in connection with Mr. Ducote's business, nor that the latter had authoritative control of the plaintiff. Appellant does contend, however, that plaintiff's service was a mere gratuity, and consequently there could be no agreement, expressed or implied, between the two which created the necessary employee-employer relationship for workmen's compensation benefits under the statute.
Although the plaintiff testified that he did not expect remuneration for his services, the trial judge made it clear that he considered plaintiff's mentality in connection with that statement. A reading of plaintiff's testimony satisfies this court, as it obviously satisfied the district judge, that this plaintiff is economically depressed and that his testimony to the effect that he expected no remuneration was caused by timidity and insecurity. In that connection the trial judge stated:
"It is inconceivable to the Court that Ducote expected this day laborer, plaintiff, to get off his regular job, for one *108 hour, and work for him, and have no intention to pay or remunerate him. And even if the Court considers plaintiff's mentality, he no doubt assumed he would get some pay or remuneration while he was so doing work for Ducote. And the subsequent conduct of both, paying and accepting the dollar, bears out this conclusion."
The trial judge heard and observed this plaintiff testify. He was cognizant of all circumstances surrounding this transaction. In effect, he concluded that the exigencies at the time Mr. Ducote secured the services of plaintiff were such that the latter assumed he would be compensated in some way. We have great difficulty in finding manifest error in the trial judge's conclusion in this respect.
As to Mr. Ducote's intention, it is clear that he did not expect plaintiff to work for him free of charge. Although Mr. Ducote indicated that he considered the $1.00 stipend to be a tip, his forthright testimony indicates otherwise. In referring to the circumstances concerning payment for services, the trial judge stated:
". . . Ducote solicited plaintiff's help; plaintiff said he would have to clear it with his own boss at the service station; later, this was cleared and plaintiff obtained permission to go help Ducote. He went, for about an hour; he was with and under the control of Ducote for this hour; upon return, Ducote says `I went over to the station; I gave him a dollar; at first he did not want to take it; but he did when I insisted; I did not want him to do this for nothing.'" (Emphasis added)
Considering all circumstances in this case, we feel that there was an implied agreement of employment between the parties and we find no manifest error in the trial court's determination that the service performed by the plaintiff for Mr. Ducote was not intended as a gratuity. Consequently the necessary employee-employer relationship was established so that plaintiff became a borrowed employee and is thereby entitled to workmen's compensation benefits.
Able counsel for appellants cite the case of Lewis v. Bellow, supra, in furtherance of their position that plaintiff in this case is not entitled to recovery under the borrowed employee doctrine. We distinguish that case in at least three particulars: (1) In Lewis there was no three-party agreement. Lewis' principal employer knew nothing of any alleged arrangement between the worker and Bellow. As correctly pointed out by Professor Malone in his aforementioned Treatise § 57, page 62, in order to effectuate the borrowed employee doctrine there must be a three-party agreement between the lender-employer and borrower-employer as well as an agreement by the employee who must consent to the change of masters; (2) In Lewis, as distinguished from the case before us, the trial judge concluded factually that the circumstances surrounding plaintiff's employment status was such that, at best, plaintiff's service was a mere gratuity; (3) In Lewis, even assuming that the plaintiff may have expected some sort of remuneration, the circumstances indicated that his service was nothing more than a returned favor to the so-called borrower, Bellow.
For the above and foregoing reasons the judgment of the District Court is affirmed at appellant's costs.
Affirmed.
SAVOY J., dissents and assigns written reasons.
SAVOY, Judge (dissenting).
The issue presented is whether there was an employer-employee relationship between plaintiff and Roy Ducote, so that plaintiff could recover compensation benefits under the Workmen's Compensation Act.
In his treatise on workmen's compensation, Larson discusses the lent or borrowed *109 employee. Section 48:10 describes the requirements:
"There can be no compensation liability in the absence of a contract of hire between the employee and the borrowing employer." 1A, Larson, The Law of Workmen's Compensation, Section 48:10, Page 805 (1967).
From the testimony of the plaintiff and the defendant, it can be seen that there was no contract or agreement expressed or implied between the two creating the necessary relationship for workmen's compensation benefits under the statute. The following exchange between counsel for defendant and plaintiff took place at trial.
"Q. Now during that entire time, from the time that Mr. Roy first talked to you about helping him until the time that you left him to go back to your job, at any time did you have an understanding or agreement with him with regard to payment for your services?
"A. No, sir.
"Q. None at all. Did you discuss with him at any time any payment for services?
"A. No, sir.
"Q. Did you expect him to pay you for your services?
"A. No, sir.
"Q. Not at all?
"A. No, sir.
"Q. In other words anything he would give you at any time if he did would be just a gift?
"A. Yes, sir, because I didn't ask him for no money, he came on his own will and give it to me.
"Q. That was a gift wasn't it? It was not payment for work was it?
"A. No, sir.
"Q. So you had absolutely no understanding of any kind with him, is that right?
"A. Yes, sir.
"Q. Did Mr. Gaspard, Mr. Paul Gaspard, after you told him that Mr. Roy wanted you to help, did Mr. Gaspard have any understanding with Mr. Roy that Mr. Roy was to pay you for the work?
"A. No, sir.
"Q. None at all. In other words you were going to help him but your boss and the one that was going to pay was still Mr. Paul Gaspard?
"A. Yes, sir.
"Q. You were not looking to Mr. Roy at all for anything?
"A. No, sir.
"Q. By agreement or otherwise? Is that right?
"A. Yes, sir." (Tr. 168, 169, 179.)
It is obvious from the plaintiff's testimony that he frankly admits he never asked before or after the accident to be paid for the time he gave Mr. Ducote in moving the refrigerator. When taken in the context of the surroundings, it is apparent that the service performed for Mr. Ducote by the plaintiff was a mere gratuity. This is further buttressed by the fact that the employee, when offered a dollar tip a day later, refused to take it until it was insisted that he do so. A person performing work gratuitously for another is not entitled to workmen's compensation benefits for an injury sustained in the performance of such an act since there is no employee-employer relationship.
For the foregoing reasons, I respectfully dissent.