UNION LIGHT & POWER COMPANY,
et al., Petitioners,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Elrich Contracting, Inc.,
et al., Intervenors.

Dale Glasby, Intervenor.

No. 00–AA–589.

District of Columbia Court of Appeals.

Argued Dec. 17, 2001.
Decided April 25, 2002.

Jeffrey W. Ochsman, with whom Alan D. Sundburg, Washington, DC, was on the brief, for petitioners.

Amy L. Epstein for intervenors Elrich Contracting, Inc., et al.

Daniel S. Roth, with whom Kurt Berlin Washington, DC, was on the brief, for intervenor Dale Glasby.

Robert Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, with whom William J. Earl, As-sistant Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before STEADMAN, REID and GLICKMAN, Associate Judges.

REID, Associate Judge.

Union Light & Power Company and its insurance company ("Union Light") filed a petition for review of a decision of the Director of the District of Columbia Department of Employment Services ("DOES") affirming the compensation order of a DOES hearing examiner. The hearing examiner determined that Union Light was solely liable for the death benefits paid to a widow of a deceased Union Light employee. Union Light challenges the DOES decision, claiming that at the time of his death, the decedent was either a borrowed or a joint employee under workers' compensation law, and hence, either Elrich Contracting, Inc. ("Elrich") was solely liable for the compensation award, or both Union Light and Elrich were jointly liable. We affirm the Director's decision that at the time of his accident, the decedent was performing "a voluntary act which arose out of and in the course of his employment with Union Light," and that there was no express or implied contractual arrangement establishing that he was either a special or borrowed employee of Elrich, or a joint employee of both Elrich and Union Light.

## FACTUAL SUMMARY

The factual findings of the DOES hearing examiner and the testimony presented at a DOES hearing show that in this case, the decedent, Nolan Glasby, fell to his death from the fourth floor of Building 59 at the Naval Research Laboratory ("Naval Laboratory") in the District of Columbia. At the time of his death, Mr. Glasby was an electrician and employee of Union Light, an electrical subcontractor of El-

rich; Mr. Glasby had been employed by Union Light as a foreman "for over thirty years." Elrich had a contract to renovate the third and fourth floors of the Naval Laboratory, and to perform other duties. Although "[i]t was common practice for employees of Elrich and Union Light to assist one another as needed[,]" Mr. Glasby was paid only by Union Light. He worked the 6:00 a.m. to 2:30 p.m. shift.

On the afternoon of January 8, 1997, around 2 p.m., Mr. Glasby called in his time to the owner of Union Light; payroll records show that he worked eight hours on that day. He then "volunteered to assist [Elrich's project superintendent] in taking down a mechanical lifting device (winch) from the roof." [1] Elrich's project superintendent decided to accept Mr. Glasby's offer of help. He went to the roof of the building "to unhook the pulley" and to lower the winch to Mr. Glasby. Mr. Glasby stood at a "wall opening [which] was not protected with a guardrail." After calling out instructions to Mr. Glasby, the project director "stepped out on the parapet wall extending from the roof to finish unhooking the winch[,] ... looked down and saw Mr. Glasby falling." [2] Mr. Glasby died as a result of his fall.

Subsequently, Mr. Glasby's widow, Dale M. Glasby, filed a claim for benefits under the District of Columbia Workers' Compensation Act of 1979 ("the Act"), D.C.Code § 36–301–345 (1997), recodified at § 32–1501–1545 (2001). Union Light maintained that Elrich was "liable, either jointly or entirely, for death benefits" under § 36–309 (1997), recodified at § 32–1509 (2001).

In response to Union Light's argument that Mr. Glasby was a "borrowed servant" at the time of his death, the hearing examiner recognized that, "there is a presumption in favor of the continuance of the general employment." Furthermore, after relying on *Thomas v. Hycon, Inc.*, 244 F.Supp. 151 (D.D.C.1965) which cited a section from 3 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW (2001 ed.), the hearing examiner concluded, with supporting citations to case law, that, "there was no contract of hire, express or implied, between Elrich and the decedent" and thus, "[t]here can be no compensation liability in the absence of a contract of hire between the employee and the borrowing employer." [3] In addition, the hearing examiner decided that there was no agreement between Elrich and Union Light, and "[m]ere cooperation is not enough to create an employment relationship." While there was some indication that a joint employee status existed, the hearing examiner nonetheless concluded that: "Although there is a mutual business interest between the two employers, and perhaps

---

1. The winch was a lifting device used to remove debris. Mr. Alfred Adam Lisiewski, President and owner of Union Light, testified that Mr. Glasby was not instructed to assist Elrich's project superintendent. Nor did Elrich indicate a desire to borrow Mr. Glasby to assist Elrich with its work.

2. An emergency telephone call was made to the police at approximately 2:10 p.m.

3. Larson states in § 67.01[1] of his treatise:
   When a[n] employer lends an employee to another party, that party becomes liable for worker's compensation only if

(a) the employee has made a contract of hire, express or implied, with the second employer;
(b) the work being done is essentially that of the second employer; and
(c) the second employer has the right to control the details of the work.
   When all three of the above conditions are satisfied in relation to both employers, both employers will be liable for workers' compensation and both will have the benefit of the exclusivity defense to tort claims.
   *Id.* at 67–2.

even some element of control, joint employment as to one employer cannot be found in the absence of a contract with that employer." Since there was no contract between Mr. Glasby and Elrich, the hearing examiner found that he was not a joint employee of Elrich and Union Light.[4] Consequently, Mr. Glasby "was solely an employee of Union Light [ ] at the time of his fatal accident...."[5] Moreover, "[t]he unfortunate accident was the result of an incidental, voluntary act which arose out of and in the course of his employment with Union Light."

## ANALYSIS

Union Light contends that because DOES failed to make "specific findings of fact on the existence of an implied contract, this matter requires remand for further findings." In addition, Union Light maintains that since Mr. Glasby "was engaged in a valuable service for Elrich ... [and] Elrich accepted [the] service[ ] ... [,] there was in fact an implied contract of hire between [Mr. Glasby] and Elrich." Union Light also contests DOES's conclusion that Mr. Glasby volunteered to assist Elrich's project superintendent, arguing instead, that Mr. Glasby's consent to the employment relationship with Elrich may be implied from his "acceptance of the control and authority of a special or dual employer...." In addition, Union Light

takes issue with DOES's conclusion that Mr. Glasby was not a joint employee of Union Light and Elrich.

Elrich argues that the DOES "decision is supported by substantial evidence in the record, [and thus], ... must be affirmed." Contrary to the position of Union Light, Elrich maintains that the DOES hearing examiner made factual findings to support her conclusions, and properly applied the law relating to borrowed and joint employees. Mrs. Glasby contends that the DOES decision should be affirmed since there was sufficient evidence to establish that no implied employment contract existed between Mr. Glasby and Elrich.

In reviewing an agency's decision, "we must sustain [its] findings unless they are 'unsupported by substantial evidence in the record of the proceedings.'" *See Snipes v. District of Columbia Dep't of Employment Servs.*, 542 A.2d 832, 835 (D.C.1992) (quoting D.C.Code § 1–1510(a)(3)(E)(1999)). "However, we 'will not disturb the agency's decision if it flows rationally from the facts which are supported by substantial evidence in the record.'" *Oubre v. District of Columbia*, 630 A.2d 699, 702 (D.C.1993) (citing *Madison Hotel v. District of Columbia Dep't of Employment Servs.*, 512 A.2d 303, 306 (D.C. 1986)). We give deference to an agency's interpretation of its governing statute "so

---

4. Larson indicates in § 68.01 of his treatise that:

> Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation.

*Id.* at 68–1–68–2 (citing *Bulgrin v. Madison Gas & Elec. Co.*, 125 Wis.2d 405, 373 N.W.2d 47 (1985)).

5. In addressing the fact that Mr. Glasby had called in his time for the day before commencing his voluntary act with Elrich, the hearing examiner declared:

> The course of employment includes a reasonable interval before and after official working hours, while the employee is on employer's premises engaged in incidental acts. Injury or death occurring at the work site during such interval may be presumed to have occurred during the course of that employment. *Kolson v. District of Columbia Department of Employment Servs.*, 699 A.2d 357 (D.C.1997).

long as that interpretation is reasonable and consistent with the statutory language." *District of Columbia v. Davis*, 685 A.2d 389, 393 (D.C.1996) (quoting *Taggart–Wilson v. District of Columbia*, 675 A.2d 28, 29 (D.C.1996)).

■ We begin with the definition of a "special employee" (which pertains to both a "borrowed" and a "lent" employee). " 'A special employee is described as one who is transferred for a limited time of whatever duration to the service of another.' " *Oppedisano v. Randall Elec. Inc.*, 285 A.D.2d 759, 728 N.Y.S.2d 570, 572 (2001) (quoting *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 578 N.Y.S.2d 106, 585 N.E.2d 355, 357 (1991)). Whether an individual is a special employee generally is a question of fact. *Thompson, supra*, 578 N.Y.S.2d 106, 585 N.E.2d at 357 (citations omitted). However, "special employment status may be made as a matter of law where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact." *Id.* (citations omitted). Moreover, a person seeking to establish a special employment status must overcome the presumption favoring continuance of the general employment. As Larson states:

> The only presumption is the continuance of the general employment, which is taken for granted as the beginning of any lent-employee problem. To overcome this presumption, it is not unreasonable to insist upon a clear demonstration that a new temporary employer has been substituted for the old . . . .

Larson, *supra*, § 67.03 at 67–7; *see also Parson v. Procter & Gamble Mfg. Co.*, 514

N.W.2d 891, 894 (Iowa 1994) ("[I]n cases involving the question of whether an employee of a general employer became the employee of a special employer, the presumption is that the general employer continues as the sole employer." (Citations omitted)).

■ A starting point in overcoming the presumption that the general employment continues is satisfaction of the first element of Larson's test, the existence of an express or implied contract. As the court declared in *Thomas, supra:* "Before a person can be held as a joint, or special, employer there must be a contract of hire, express or implied, between the employee and [the] dual or borrowing employer." 244 F.Supp. at 156 (citing *In re Brooks' Case*, 338 Mass. 692, 157 N.E.2d 231 (1959)) (other citations omitted). Furthermore, Larson states that: "[T]here can be no compensation liability in the absence of a contract of hire between the employee and the special employer." Larson, *supra*, § 67.02[1] at 67–5. Thus, to establish the existence of either a special (borrowed) or joint employee relationship in this case, there must be either an express or an implied employment contract between Mr. Glasby and Elrich.

■ Here, the parties agree that no express contract existed between Elrich and Mr. Glasby, nor between Elrich and Union Light relating to any special employment of Mr. Glasby by Elrich. Therefore, if a contract existed, it must be an implied contract.[6] A central question relating to an implied contract in the setting of this case is whether Mr. Glasby consented to employment with Elrich. *See Borne-*

---

6. *See Emerine v. Yancey*, 680 A.2d 1380, 1383 (D.C.1996) for a discussion of the distinction between an "implied-in-fact" and an "implied-in-law" contract. In this case, we are concerned with whether an "implied-in-fact" contract existed between Mr. Glasby and El-

rich. An "implied-in-fact" contract "is inferred from the conduct of the parties in the milieu in which they dealt." *Id.* (quoting *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (D.C.1993) (other citations omitted)).

man v. Corwyn Transport, Ltd., 219 Wis.2d 346, 580 N.W.2d 253, 256 (1998) (The first "vital" question is: "Did the employee actually or impliedly consent to work for a special employer?"); see also Appeal of Longchamps Electric, Inc., 137 N.H. 731, 634 A.2d 994, 996 (1993) ("Professor Larson advocates as a threshold requirement for borrowed servant status the consent of the employee to the new employment relationship."); In re Brooks' Case, supra, 157 N.E.2d at 233 ("Consent of an employee to become the servant of one to whom he is lent is a necessary element. And obviously he could not be held to have entered into a contract of employment if he had not assented to such employment" (citation omitted)).

Elrich contends that Mr. Glasby's consent may be implied from his acceptance of the control and authority of its project superintendent. Although "[a]cceptance of the control and authority of a special or dual employer may indicate consent," see Thomas, supra, 244 F.Supp. at 156, "the right to control a servant's conduct cannot be inferred from facts which do not indicate the employee's consent." Id. Stated another way, consent to an employment agreement is not imputed as a matter of law; it must be established factually. See Parson, supra, 514 N.W.2d at 894 (citing Novenson v. Spokane Culvert & Fabricating Co., 91 Wash.2d 550, 588 P.2d 1174, 1177 (1979)). Proof of consent is required because:

> The need for a contract to hire in the lent employee situation is based on the fact that the employee loses certain rights along with those gained when striking up a new employment relation.... [M]ost courts have required a showing of a deliberate and informed

consent by the employee before employment relation will be held a bar to a common-law suit.

Larson, supra, § 67.02[2] at 67–5; see also Parson, supra, 514 N.W.2d at 894 (stressing "deliberate and informed consent"). See also Vance Int'l v. The Industrial Comm'n of Ariz., 191 Ariz. 98, 952 P.2d 336, 338 (App.1998) (joint employment does not exist without a contract of hire despite the exercise of control by the alleged joint employer); Larson, § 68.01 at 68–2 (requiring a contract with both employers for joint employment).

The record in this case shows that Mr. Glasby worked an eight-hour shift for Union Light on the day of his death. The President and owner of Union Light testified that Mr. Glasby called him to report his time for the day. Following Mr. Glasby's death, the President of Union Light interviewed Elrich's project superintendent and found that "[Mr. Glasby] volunteered to help [the project superintendent] take ... down [the lifting device] because [the project superintendent] didn't have any additional help on site from his own company."[7] The record is silent as to any indicia of Mr. Glasby's "deliberate and informed consent" to an employment relationship with Elrich with respect to his help with the lifting device on the fatal afternoon.

In Rast Constr., Inc. v. Ada Peters, 689 So.2d 781 (Ala.1996), the court stated:

> For [the decedent] to [have] be[en] a "special employee" of [the subcontractor], there must [have] be[en] a consensual relationship between [the decedent] and [the subcontractor] sufficient to create a new and separate employer-employee relationship. It is unreasonable

---

**7.** When Elrich's project superintendent was deposed in this matter, he stated that Mr. Glasby had offered to assist him with the lifting device on two other occasions that day, and that he had accepted the third offer of assistance.

to presume that by [the decedent's] taking over for a fellow employee for 30 minutes, with his [general contractor] supervisors on hand, he and [the subcontractor] formed a consensual relationship and contract for hire.

*Id.* at 783–84. The same reasoning is applicable to Mr. Glasby's case. He assisted the Elrich project superintendent for less than ten minutes at the end of his work shift for Union Light. Elrich presented no evidence that Mr. Glasby was to be paid for his work, or that he intended to enter into any kind of employment arrangement with Elrich.

Contrary to Union Light's contention, *Gaspard v. Travelers Ins. Co.*, 284 So.2d 104 (La.App.1973) does not support the existence of an employment relationship between Mr. Glasby and Elrich. There, the special employer sought the plaintiff's help. The plaintiff asked "his own boss" whether he could assist the special employer; his boss gave his approval. The plaintiff assisted the special employer for approximately one hour, and the special employer gave him one dollar, saying that: "I did not want him to do this for nothing." *Id.* at 108. In affirming the finding of an implied agreement of employment, the *Gaspard* majority emphasized the trial court's conclusion "that the exigencies at the time [the defendant] secured the services of [the] plaintiff were such that the latter assumed he would be compensated in some way"; and that the defendant "did

not expect [the] plaintiff to work for him free of charge." *Id.* at 108.

Unlike *Gaspard, supra*, Mr. Glasby did not seek the permission of Union Light to assist Elrich's project supervisor.[8] Nor is there any indication in the record that Mr. Glasby requested or expected payment for helping Elrich. Yet, under our case law, an expectation of payment is a required element of an implied contract. *See Vereen, supra*, 623 A.2d at 1193.

We are unpersuaded by Union Light's argument that DOES failed to make appropriate factual findings regarding the existence of an implied contract. The DOES hearing examiner made specific findings of fact that are consistent with the evidence presented, and which are set forth in the compensation order. In addition, DOES has the authority to make a reasonable interpretation of its governing statute that is consistent with the law, and we do not regard as unreasonable DOES' adoption of the Larson test for determining whether, under the facts presented, a special employment status existed between Mr. Glasby and Elrich, or whether he was a joint employee of Elrich and Union Light.[9]

Consequently, our review of applicable case law and pertinent sections of Larson's treatise indicates support for DOES' conclusion that Mr. Glasby volunteered his services, and hence, there was no implied employment contract between Mr. Glasby and Elrich. Given: (1) the presumption that general employment continues even

---

8. The contract between Union Light and Elrich specified that in order to perform extra work for Elrich, Mr. Glasby was required to obtain permission from Union Light's President and owner.

9. Other jurisdictions have relied on the Larson test for special employment, or a modification of that test, and on Larson for the elements of joint employment. *See, e.g., Whitehead v. Safway Steel Prods., Inc.*, 304 Md. 67, 497 A.2d 803, 811 (1985); *Rast, su-*

*pra*, 689 So.2d at 783. Still others have looked to §§ 220 and 227 of the RESTATEMENT OF THE LAW (SECOND) AGENCY (1958), *see, e.g., LaVallie v. Simplex Wire and Cable Co.*, 135 N.H. 692, 609 A.2d 1216 (1992); *Borneman, supra;* or have fashioned their own modified test to determine the existence of a special employment arrangement, *see Hutchinson v. Fahs–Rolston Paving Co.*, 287 A.D.2d 936, 732 N.Y.S.2d 116, 118 (N.Y.App.Div.2001).

when an employee performs a task for another employer; (2) the absence of any factual evidence indicating Mr. Glasby gave his deliberate and informed consent to enter into an employment contract with Elrich; and (3) the non-existence of any evidence showing either that Mr. Glasby received or expected payment for helping Elrich with the lifting device, DOES' conclusion not only is reasonable and consistent with the law, but also requires our deference. *See Davis, supra.* We agree with DOES, then, that Mr. Glasby's accident and death resulted from "an incidental, voluntary act which arose out of and in the course of [his] employment with Union Light." He was neither a borrowed employee of Elrich nor a joint employee of Elrich and Union Light. Rather he was solely the employee of Union Light at the time of his accident. These conclusions " 'flow[ ] rationally from the facts which are supported by substantial evidence in the record.' " *Oubre, supra,* 630 A.2d at 702.

Accordingly, for the foregoing reasons, we affirm the decision of the agency.

*So ordered.*